Nov. Term,
1833.

MANN
v.
CLIFTON.

---

### MANN and Others *v.* CLIFTON.

If a new trial—moved for on account of the insufficiency of the evidence to support the verdict—be refused, and the refusal assigned for error, the impropriety of the verdict must appear beyond all doubt, or this Court will not interfere.

On a motion for a new trial, because of a witness' intoxication and consequent absence at the time of trial, the witness' affidavit of what he will swear to must be produced, or its absence accounted for.

If the record show that the jury were sworn, the omission of the words, "the truth to speak in the premises," is not material.

*Friday,
November 29.*

ERROR to the *Parke* Circuit Court.

BLACKFORD, J.—*Elias Clifton* brought an action of trespass *quare clausum fregit* against *Christopher Mann, William Mann,* and *Vance Rusk.* The complaint is, that the defendants had broken the plaintiff's close, pulled down his house, and destroyed his furniture in the house. The defendants pleaded not guilty. The jury gave a verdict in favour of the plaintiff for 900 dollars in damages. A motion for a new trial, made by the defendants, was overruled, and a judgment rendered on the verdict.

The plaintiffs in error, who were the defendants below, contend that a new trial ought to have been granted in this cause, because of the insufficiency of the evidence and the excessive amount of the damages. The evidence given in the cause is set out in the record. The guilt of two of the defendants,

*Christopher Mann* and *Vance Rusk*, is proved by the positive evidence of several witnesses, who were present and saw them engaged in committing the trespass. The proof as to *William Mann*, the other defendant, is not so clear. There are two witnesses, however, who were well acquainted with him, and who were present when the trespass was committed. They say it was moonlight or starlight; that they saw the features of the trespassers; and that judging from his size and shape, they are almost sure that *William Mann* was one of them. There is another witness who says she saw all the trespassers, five in number; that she was not then acquainted with *William Mann*, but that she knew him at the trial; and that the size and shape of one of the trespassers corresponded with his. Besides *these witnesses*, there is a great deal of other testimony of a circumstantial nature; some of it tending to strengthen their evidence against the defendants, and some to weaken it. There was nothing proved, however, which contradicts these witnesses. It is impossible for this Court, under these circumstances, to interfere with the refusal of the Court below to grant a new trial, and to say that the verdict is unsupported by proof. It is at best a very delicate matter for an appellate Court, not having heard the witnesses examined, to disturb the opinion of the jury and of the inferior Court, relative to the weight of the testimony. To justify us in interfering in such a case, the insufficiency of the evidence must be shown beyond all doubt. That has not been done, by any means, in the suit before us.

The objection to the verdict, in consequence of the largeness of the amount, is not tenable. The trespass was committed in the dead of night, whilst the owner of the house and his wife were absent at a place of divine worship. It was on a Sunday night. The trespassers were armed with clubs and knives. The roof of the house was pulled down. The furniture was destroyed. The plaintiff's children were dragged out of bed, and put out of doors. In so aggravated a case, the damages found by the jury are far from being excessive.

It is further contended that a new trial should have been granted, on account of an affidavit made by one of the defendants. This affidavit states that *Lewis Smithey* was a material witness for the defendants; that they could have proved by him

that they were not present when the trespass was committed, and had nothing to do with it; that the defendants, when they were about to call this witness whom they had subpœnaed, discovered for the first time that he was very much intoxicated; that he had received no spirits from the defendants; that the witness can be procured at another term; and that the deponent knows of no other witness by whom the same facts can be proved.

One objection to this affidavit is, that the defendants did not procure the affidavit of *Smithey* himself as to what could be proved by him, nor show that such affidavit could not be obtained. Such an affidavit by the witness is required, when an application for a new trial is made on the ground of newly discovered evidence. *Denn* v. *Morrell*, I Hall, 382. We think the affidavit of the witness himself is as essential in the case before us, as in the one we have referred to. The affidavit of the party is but secondary evidence to show that the facts stated can be proved. The affidavit of the witness is the best evidence, and should be produced, or its absence accounted for. Another objection to this affidavit is, that it was the duty of the defendants, as soon as they discovered the witness to be intoxicated, to inform the Court of the fact. The Court might have then examined into the circumstances of the case, and upon their finding that the witness, without the defendants' fault, was not in a situation to be examined, they might have delayed the trial for a short time, or have continued the cause until the next term, according as the circumstances required.

The plaintiffs in error rely upon one other ground for a reversal of the judgment. That ground is, that the record does not state that the jury were sworn *the truth to say in the premises.* The entry in the record is, that the jurors (naming them) being called came, who being *elected, tried,* and *sworn,* after hearing the testimony, &c. This entry in the record is somewhat informal; but the informality is not, in our opinion, sufficient to require a reversal of the judgment. In a case where the record only stated that the grand jury and the officer attendant on the petit jury had been sworn, without giving the form of the oaths, it was held that, in the absence of any contrary proof, the legal oaths must be presumed to have been administered. *Hudson* v. *The State*, in this Court, *November* term, 1824. In the cause

before us, the record states the jury to have been sworn, and we will presume them to have been lawfully sworn, until the contrary is proved.

*Per Curiam.*—The judgment is affirmed, with 1 *per cent.* damages and costs.

*D. Wallace* and *J. Whitcomb*, for the plaintiffs.

*A. S. White* and *J. H. Farnham*, for the defendant.