THE MADISON AND INDIANAPOLIS RAILROAD COMPANY v. TAFFE.

| 37 | 361 |
| 134 | 685 |
| 136 | 186 |

| 37 | 361 |
| 169 | 461 |

PRACTICE.—*Reversal on Evidence.*—*Rule Upon Motion for New Trial.*—A judgment will not be reversed upon the mere weight of evidence, by the Supreme Court, unless upon a material point upon which the evidence is all documentary. Where there is evidence, which, if it were uncontradicted, would be sufficient to support the finding, the judgment will not be reversed on the evidence. This rule must not be applied in the court trying the cause.

PLEADING.—*City Ordinance.*—*Negligence.*—In an action against a railroad company, for an injury caused by negligence in running its cars, a copy of a city ordinance limiting the speed of trains need not be filed with the complaint, to authorize its introduction in evidence; an averment of its existence is sufficient.

SAME.—*Evidence.*—Such an ordinance, under the allegations of such a complaint, was held admissible, to prove that the defendant was guilty of negligence, and proper for the jury to consider in determining whether the plaintiff was without fault.

NEGLIGENCE.—*Railroad.*—*Street Railroad.*—*Instructions.* — Instructions upon the degree of care to be exercised by the controller of a railway train and the conductor of a street car, at a crossing, are set out and commented upon in the opinion.

APPEAL from the Marion Circuit Court.

BUSKIRK, J.—The appellee sued the Madison and Indianapolis Railroad Company and the Union Railway Company. The complaint alleged, that on the 20th day of December, 1865, in the corporate limits of the city of Indianapolis, he was engaged as the conductor of a car of the Citizens' Street Railway Company, then being run upon the track of said street railway company, upon Virginia Avenue, a street of said city.

That, while acting as such conductor upon a car of said street railway company, at the point where the track of the street railway crosses the track of the said Union Railway Company, the same being also the point at which Alabama street crosses said Avenue, and while standing upon the platform of said street railway car, said Madison and Indianapolis Railroad Company so carelessly and negligently run

The Madison and Indianapolis Railroad Company *v*. Taffe.

a certain train of platform cars upon said Union track, at the point of bisection and crossing aforesaid, that the same was with great force and violence run and backed upon and against said street railway car, upon which the said appellee was then and there conductor; that, by means of said carelessness and negligence of said Madison and Indianapolis Railroad Company, the appellee was knocked off said street railway car, and carried down and under the train of said Madison and Indianapolis Railroad Company, for a distance of thirty yards, and was greatly bruised in his body, and had his right leg so broken that it became and was then and there necessary to have the same amputated.

That said injuries resulted from the aforesaid carelessness and negligence of said Madison and Indianapolis Railroad Company, and without any fault or negligence on the part of the appellee, etc.

That the railroad train did not stop before crossing the track of the street railway; that there was not upon said train any conductor or brakeman to superintend the running of the train, stop and control the same to prevent accident and injury, when the same might become necessary; and did not, on approaching or passing the point of bisection and injury aforesaid, ring any bell whatever to announce their coming, running, and passing upon said Union track.

No ordinance of the city of Indianapolis is pleaded, but it is alleged that the appellant and similar companies were prohibited by the ordinances of said city from running their trains at a greater rate of speed than — miles per hour, and the plaintiff's train was running at a greater rate than five miles per hour.

The action as to the Union Railway Company was dismissed.

The appellant answered in two paragraphs. The first was the general denial. The second was a very studied and ingeniously prepared argumentative denial, to which a demurrer was sustained.

The cause was tried by a jury, and resulted in a verdict for the plaintiff.

A motion for a new trial was made, overruled, and judgment rendered on the verdict.

Two errors are assigned; first, the sustaining of the demurrer to the second paragraph of the answer; second, the overruling of the motion for a new trial.

There was no error in sustaining the demurrer to the second paragraph of the answer, as it amounted to no more than the denial. Every fact alleged in it was admissible, and in point of fact was admitted under the denial. It should have been stricken out on motion, but the appellant was not injured by the demurrer being sustained to it.

The refusal of the court to instruct the jury, as requested by the appellant is urged as a reason why the court should have granted a new trial. The instructions asked were as follows:

"First, if the jury believe that the bell on the defendant's train was being rung as it approached the street railroad crossing on Virginia Avenue, and that the tracks north of the Union track, on which the defendant's train was approaching, were filled with cars so as to obstruct the view of the Union track, and that the street car driver could not see whether there was a train approaching or not, it was the duty of the street car driver to stop the street car, and look up the track, to see whether there was or was not a train approaching; and if he neglected this, and attempted to cross the Union track, and the car was struck before it got across, this was negligence, contributing to the injury of the plaintiff, that would prevent a recovery by the plaintiff.

"Second, the rate of speed fixed by the city ordinance is not conclusive of the question of reasonable speed, as it arises between the parties in this case. For example, if it appeared here that the defendant's cars were running at the rate of four and a half or five miles an hour, while the city ordinance prohibited a greater speed than four miles an hour; but that the accident would have happened all the same, if the cars

had been running at only four miles per hour, the plaintiff is not entitled to recover merely because of such extra speed. You are the judges as to what is a reasonable speed under the circumstances, and it is your duty, in determining it, to be governed by the weight of the testimony offered."

We are not required to determine whether the above instructions were correct or not, for in our judgment the instructions as given by the court embraced the entire subject-matter of those asked and refused. We are clearly of the opinion that the appellant has no right to complain of the instructions of the court, for those given were certainly as favorable to the appellant as the law would justify, and if the appellee was complaining of the instructions we might be required to modify some of them.

The instructions given were as follows:

"The plaintiff brings this suit to recover damages for injuries he alleges were caused to him by reason of negligence on the part of the defendant, the railroad company, in the conduct of her train in crossing the track of the street railway company, upon one of the streets of the city of Indianapolis, which injuries, the plaintiff alleges, were received by him without any fault on his own part.

"It is necessary, to entitle the plaintiff to a verdict in this case, that he should establish by a preponderance of the evidence, not only that the injuries were received from the negligence of the defendant, but also that his own negligence did not contribute to the injury. Unless the evidence preponderates on both these points in favor of the plaintiff, then your verdict should be in favor of the defendant.

"The steam cars of the defendant and the street car upon which the plaintiff was the conductor were each engaged in a lawful business, and each was entitled to cross the track of the other. These rights were mutual. Neither was entitled to the exclusive use of the street upon which the tracks were located, but each could rightfully cross the track of the other. Although each was bound to use proper precautions for their own safety, and the safety of each other.

"In considering the question of negligence on the part of the defendant, the railroad company, you may take into consideration the length and weight of her train, the force and means employed for its control, whether the same was reasonable and proper, the place where the train was running, and its nearness to the crossing of the street and the street railway, the presence of obstructions to the view of the crossing and that part of the street near to the crossing, the condition of the track, the rate of the speed of the train, and the signals and warnings, if any were given.

"The defendant had the right to run her train at reasonable and practicable rate of speed through the city and over the crossings, and was not bound to bring it to a stop at or before the crossing. She was not bound, in the nature of her business, to ascertain that the track was clear before venturing on the crossing. The defendant, as a railroad company, had the right to use heavy and powerful machinery, to come into collision with which is dangerous to persons and vehicles drawn by horses, as usual upon streets. But she was bound to use a high degree of care and diligence in controlling her machinery and trains, and in running her trains. The defendant should have run with such prudence and such precaution against accidents as are consistent with due regard to the safety to life and property, and should give proper signals and warnings of the approach of her trains; and if the view of the street from the train was obstructed by the cars of other companies, standing, whether upon their own ground, or upon and within the line of the street, this would call for more than the ordinary diligence and care in approaching the crossing, to guard against accident.

"If, in investigating this case, and governed by these principles of law, as applicable to it, you find that the servants of the defendant did not exercise the care, diligence, prudence, and proper precaution in approaching the crossing, as was necessary, and were therefore guilty of negligence, then you should further inquire whether the plaintiff was in fault,

or was guilty of any negligence contributing to the happening of the injury.

"If the plaintiff was the conductor of the street car, and was upon the street car at the time of the collision, and the driver of the street car was in fault, and by his neglect contributed to the happening of the injury, any such neglect was, in law, the neglect of the plaintiff, and the plaintiff is chargeable with it, and it would be sufficient to defeat this action, and entitle the defendant to a verdict.

"In considering this question of the contributory negligence of the plaintiff or of the driver of the street car, you may take into consideration the obstructions which may have been in the way of a view toward the point from which the defendant's train was approaching, making more care on the part of the plaintiff, or the driver, necessary than would have been required if the view had been unobstructed. You may also take into consideration the state of the track which the street car was to cross, if it would render the stopping of a train more than commonly difficult; if this fact was known to the plaintiff or his driver; the frequent passage of trains at such crossing; the sudden rise of grade of the street railroad track just beyond the crossing. All these facts, so far as they are shown in evidence, should be taken into consideration in determining this point.

"The driver of a street railway car is bound to use all the care and prudence in approaching a railroad crossing that a person in charge of any other vehicle moved by power as easily controlled as mules or horses is bound to use, and ordinary prudence should prompt a person to observe the track which he is to cross, on each side, to see if any train is in dangerous proximity. It was the duty of the driver and conductor of the street car, to approach the crossing with care and caution, so as to avoid collision with the steam cars upon the railroad; and if the view to the east along the Union track was obstructed by cars of other railroad companies, standing upon other tracks, whether within or without the line of the street, then this would call for especial

care and prudence on the part of the plaintiff and his driver, in approaching the crossing; and unless he was misled by the actual absence of the usual and proper signals or warnings, it would be his duty to ascertain, in some way, that the track was clear. If about the crossing there was a confusion of the ringing of the bells upon other locomotives, so that the plaintiff or his driver could not reasonably tell that the train was approaching the crossing, this would make a careful scrutiny of the track necessary, to absolve the plaintiff from the charge of negligence.

"If you find, from the evidence, that the driver of the street car, exercising ordinary prudence, might have seen the approaching train sooner than he did, and in time to have stopped his car before coming upon the railroad track, by looking in the direction of the approaching train, but that not exercising ordinary prudence he neglected to do so in time to avoid the collision, this would be such negligence on the part of the plaintiff as would deprive him of the right to recover.

"If the defendant's train was moving at reasonable speed, and giving sufficient signal as it approached the crossing, and if the plaintiff's street car was run upon the crossing incautiously, without proper attention to the signals, or without proper observation of the track to see whether or not the crossing would be safe, the plaintiff cannot relieve himself from the consequences of his want of caution by the fact that extraordinary precautions on the defendant's part might have protected him from the result of his own imprudence or carelessness.

"If, then, the jury believe, from the evidence, that the plaintiff was injured by a collision between the freight train of the defendant and a street railway car, upon which the plaintiff was acting as conductor at the time, and that he was not in fault, either in his own person or in the person of the driver of the street car, whose fault or negligence, if any, is the plaintiff's, as I have charged; and if the jury further believe, from the evidence, that the driver of the

street car was in his proper place, and managed his team and conducted the driving of the car with the reasonable skill and prudence necessary in crossing the railroad track where the collision occurred; and if the jury further believe, from the evidence, that such collision was caused by the carelessness or negligence of the defendant's servants having control of the train, and not contributed to by the negligence of the plaintiff, or the plaintiff's driver, then the plaintiff will be entitled to a verdict.

"If the jury believe, from the evidence, that if, by the exercise of reasonable care and prudence, the plaintiff or his driver only discovered the danger when too late, in the exercise of ordinary self-possession, to save himself, then you may take into consideration the natural instincts of self-preservation in ascertaining whether the plaintiff or his driver was guilty of negligence."

Taking into consideration the instructions given, we are clearly of the opinion that there was no error in refusing those asked by the appellant.

The learned counsel for the appellant have maintained, with great earnestness and marked ability, that the verdict of the jury was not sustained by, but was contrary to, the evidence in the cause, in this, that it shows that the injury was caused by the fault and negligence of the plaintiff.

The evidence covers over seventy pages of the record. We cannot condense it into a reasonable space. We have read and considered it all. It is conflicting upon nearly every material point in the case. Evidence was offered to impeach some of the witnesses. The case, in a very special manner, depended upon the weight and consideration that should be given to the testimony. Can this court, in such a condition of the evidence, reverse the judgment on the weight of evidence? We have, for the convenience of the profession, collected together a few of the many expressions of this court on this subject.

In the case of *Rapp* v. *Grayson*, 2 Blackf. 130, the court say: "If the evidence, relative to the merits of the action, be

The Madison and Indianapolis Railroad Company *v.* Taffe.

contradictory, and the jury have any grounds for their verdict in favor of the plaintiff, a court of errors will not reverse a judgment on the verdict, because a new trial had been refused."

Again, in *Lambert* v. *Sandford,* 2 Blackf. 137, as to the material question in the case, the court say: "The jury to whom the question was submitted, after hearing a variety of testimony, have determined it in favor of the plaintiff below, and the court in which it was tried has refused to disturb the verdict. Considering the point, as we do, a doubtful one, it becomes us, as an appellate court, to let it rest where it is."

Again, in *Hoagland* v. *Moore,* 2 Blackf. 167, the court say: "When there is legal evidence that conduces to prove every material fact in the case, we must, except in extreme cases, leave the weight of that testimony with the jury, under the superintendence and control of the court before which the testimony is given; and when that court approves of the verdict, and refuses a new trial, there is no principle of jurisprudence that will require or permit an appellate court to reverse the judgment."

Again, in the case of *Lurton* v. *Carson,* 2 Blackf. 464, the court say: "The testimony presented is contradictory. Exclusive of the defect in the bill of exceptions, we should be unwilling to interfere with this verdict. The verdict of a jury is entitled to great respect. It is their province, in such a case as this, to weigh the testimony. It is with reluctance that a court would interfere. If there be ground for an honest difference of opinion, the verdict should not be set aside."

Again, in the case of *Mann* v. *Clifton,* 3 Blackf. 304, the court say: "It is at best a very delicate matter for an appellate court, not having heard the witnesses examined, to disturb the opinion of the jury and of the inferior court, relative to the weight of the testimony. To justify us in interfering in such a case, the insufficiency of the evidence must be shown beyond all doubt."

Again, in *Rogers* v. *Bishop*, 5 Blackf. 108, the court say: "This judgment was rendered upon the merits without a jury, and must therefore be viewed in the same light as if there had been a verdict for the defendant, a motion for a new trial founded on the insufficiency of the evidence overruled, and a judgment on the verdict. The judgment, in such case, must be obviously wrong to justify our interference."

Again, in the case of *Kendall* v. *Hall*, 6 Blackf. 507, the court say: "The judgment of the circuit court will not be reversed on the weight of evidence, if the evidence be contradictory."

Again, in the case of *Calkins* v. *Evans*, 5 Ind. 441, the court say: "When the court, either by operation of law or by the agreement of parties, has been substituted for a jury, its conclusions are entitled to the same consideration and respect (as the verdict of the jury). Such finding is not to be lightly set aside. It must remain as the measure of the rights of parties, unless it is clearly wrong."

Again, in the case of *McVicker* v. *Pratt*, 5 Ind. 450, the court say: "The court trying the cause, with the witnesses before it, is far better prepared to discriminate than we are; and litigants need not expect this court to reverse the judgments of other courts upon the weight of evidence, where there is sufficient in the record to sustain the judgment below."

Again, in the case of *Shanks* v. *Hayes*, 6 Ind. 59, the court say: "There is sufficient evidence in the record, in favor of the plaintiff below, taken by itself, to justify the judgment. There is also, in addition, conflicting evidence. It was all for the jury; and no rule is better settled than this, that in such case the Supreme Court cannot disturb the action of the court below in rendering judgment on the verdict of the jury."

Again, in the case of *Millhollin* v. *Jones*, 7 Ind. 715, the court say: "The verdict is complained of as contrary to the evidence. The evidence is conflicting; hence, we cannot disturb it."

Again, in the case of *Cahill* v. *Vanlaningham*, 7 Ind. 540,

the court, after holding that the law had been correctly given to the jury, and the court below having acquiesced in the finding of the jury by overruling a motion for a new trial, say: "We should be reluctant to disturb the verdict. Such has always been the rule in this court, whenever they could not clearly say there was no evidence to support the verdict."

Again, in the case of *Roberts* v. *Nodwift*, 8 Ind. 339, the court say: . "The first of the causes assigned for a new trial is rather unpromising, and by no means a favorite with the courts. It is this: the verdict is contrary to law and evidence, and is not for enough money. Courts will seldom disturb a verdict for such a cause, unless the case is a very strong one; and this is not one of that class."

Again, in the case of *Favorite* v. *Bush*, 9 Ind. 228, the court say: "Even if the record were full, and the questions fairly presented, it would hardly avail the party here. For the inquiry which the issue below presented, was peculiarly within the province of that court to decide; and unless the finding was extravagant, the rule of this court has invariably been, to give it the same weight as the verdict of a jury."

Again, in the case of *Gibson* v. *The State*, 9 Ind. 264, the court say: "Still we think the preponderance is in favor of the verdict; and even if the preponderance were otherwise, it has long been the settled rule of this court not to disturb it." *Weinzorpflin* v. *The State*, 7 Blackf. 186; *Ledley* v. *The State*, 4 Ind. 580.

Again, in the case of *O'Herrin* v. *The State*, 14 Ind. 420, the court, after holding that the rule of practice was the same in criminal as in civil cases, upon the question of setting aside verdicts on the ground that the evidence was insufficient, then say: "This court will not reverse the ruling of the court below, refusing to grant a new trial moved for on the ground that the verdict was unsustained by the evidence, unless the verdict appears most clearly erroneous."

Again, in the case of *Hollingsworth* v. *Pickering*, 24 Ind. 435, the court say: "The evidence is in the record. It is

very conflicting in regard to the alleged representations as to the locality and quality of the land sold by Hollingsworth to Pickering, in Iowa; but the evidence of Pickering, if taken as true, fully sustains the complaint on those points. It is directly contradicted by the testimony of Hollingsworth. It was, therefore, a question of credibility between the witnesses, which it was the exclusive province of the jury to determine, and we cannot examine it for the purpose of disturbing the verdict."

Again, in the case of *Shank* v. *The State*, 25 Ind. 207, the court say: "Did the evidence sustain the verdict? This question is argued before us as if we could reverse the case upon the ground that a mere preponderance of the evidence is against the verdict. It has been otherwise ruled so many scores of times by this court, and so many hundreds of times by appellate courts elsewhere, that we know not what more can be added to make the rule better understood."

Again, in the case of *Medler* v. *The State*, 26 Ind. 171, the court say: "The only question in this record is as to the sufficiency of the evidence to support the verdict. It was a bastardy case, and *seeing* the evidence upon paper, with no such opportunity as the judge and jury below had of determining upon the credibility of witnesses, it appears quite probable that the verdict should have been the other way. But this is not enough to justify us in reversing the case. To one who saw the witnesses and heard them testify, there may have appeared good reason for disbelieving some of them. The evidence was contradictory, and we must therefore assume that the judge who presided and overruled a motion for a new trial acted intelligently and upon sufficient cause."

Again, in the case of *The Indianapolis, Cincinnati, and Lafayette Railroad Co.* v. *Trisler*, 30 Ind. 243, the court say: "The appellant argues the case as if this court were to weigh the evidence and determine the preponderance thereof. Such is not our province. It must appear by the record,

not merely that the finding below was against the weight of evidence, but that that finding was wrong beyond any question whatever, before we can interfere upon the evidence alone."

Again, in the case of *McCaw* v. *Burk*, 31 Ind. 56, this court say: "There is a clear conflict in the evidence as to whether the deeds under which the appellees claim title were executed as a mortgage. This court would not reverse a judgment on the weight of the evidence."

Again, in the case of *Keneaster* v. *Vickers*, 32 Ind. 492, this court say: "This case is before us upon the evidence, which was very conflicting, the finding upon the issues depending much upon the credit due to the witnesses. It is, therefore, peculiarily a case in which this court cannot disturb the finding."

Again, in the case of *Smith* v. *Kruger*, 33 Ind. 86, this court say: "We have examined the evidence, which is in the record. The case was tried by the judge of the court below, who heard all the evidence from the witnesses themselves. It is not our province to interfere with his finding, unless it is clearly against the evidence, and can be considered only as the result of passion, prejudice, or a palpable misapprehension of the facts."

Again, in the case of *Butt* v. *The Toledo, Wabash, and Western Railway*, 34 Ind. 162, this court say: "The only question before us in this record is the correctness of the finding of the court below on the evidence, all of which is in the record. The evidence was all oral and unwritten, and is conflicting and contradictory; and the judge who tried the case was better able to determine its strength, weight, and the reliability of witnesses than we are; and therefore we cannot reverse, but must affirm the judgment."

Thus it will be seen that there has been an uniform and unbroken line of decisions on this subject from 2 Blackf. down to and including 34 Ind. The rule is not an arbitrary one, but is founded in reason, and supported by the experience of lawyers and judges. It exists not only in this court,

but in all appellate courts acting as courts of error. The reason of the rule is, that the weight which is due to the testimony of witnesses very greatly depends upon the appearance, manner, and conduct of the witnesses upon the witness stand, their intelligence, their willingness or unwillingness to testify fully and frankly upon all matters within their knowledge, without reference to whether it affects the one party or the other, and whether they are free from passion, prejudice, or undue influence. It is a very easy matter to tell the truth, but it is a very difficult matter to testify falsely and not be detected. The witness that has nothing to testify about but what he knows, is open, frank, and undisturbed in his manner, while there is an indefinable and indescribable manner and look about a witness who is swearing falsely. The judge, counsel, and jurors have the opportunity of observing all these matters, and, as a general rule, can determine, with great accuracy, whether the witness is telling the truth or a falsehood. When the evidence comes here on paper, we have nothing but the words of the witness, and they are not always correctly taken down. With us, the testimony of an untruthful and unreliable witness, who is unimpeached, has as much weight as the testimony of the best and most reliable man in the community, for we have no means of telling the one from the other. We are deprived of all the means of detecting falsehood and discovering the truth enjoyed by the judge and jury in the court below. Great and manifest injustice would be done if we should attempt to weigh the evidence and determine the credibility of witnesses. The reason of the rule does not apply to the circuit and common pleas judges; for they have the same means and opportunity of observing the witnesses, and determining the weight that is due their testimony, as are enjoyed by the jury. The rule of this court was founded, and has been adhered to, upon the supposition that the judges of the lower courts have faithfully and fearlessly discharged their duties in refusing or granting new trials, as the justice of each case may require. If we

The Madison and Indianapolis Railroad Company *v.* Taffe.

should ever have reason to believe that the judges below apply the same rule in granting, or refusing to grant, a new trial that we do to reversing a case upon the weight of evidence, then we will have to change our rule; for great and glaring injustice would result if both courts were governed by the same rule. The rule does not apply in this court when the case was tried on documentary evidence; for in such case we have the same means of examining and weighing the evidence as the judge or jury in the court below.

We cannot reverse the case upon the weight of the evidence.

The judgment is affirmed, with costs.

## On Petition for a Rehearing.

Buskirk, J.—A rehearing has been asked in this case, upon the ground that in the original opinion we had not fully considered and decided whether the court erred in admitting in evidence the ordinance of the city of Indianapolis regulating the speed of cars within the city. The question was presented in two modes; first, in the exception to the ruling of the court admitting such evidence; and, second, in the refusal of the court to give to the jury the second instruction asked by the appellant. We considered and decided the question as it arose upon the refusal to give the second instruction. We are now asked to grant a rehearing because we did not, in express terms, decide whether the evidence was admissible. Two objections are urged to the competency of the evidence, first, that it was not properly pleaded; and, second, that it was irrelevant. We think that neither objection is well taken. It was alleged in the complaint that, by an ordinance of the city, it was unlawful for trains of cars to run within the city at a greater rate of speed than four miles per hour, and that the train of cars which inflicted the injury upon the plaintiff was running at a greater rate of speed than four miles per hour.

The action was not based upon the ordinance, as was the case of *Green* v. *The City of Indianapolis*, 25 Ind. 490, and

hence it was not necessary to file 'a copy of the ordinance with the complaint.

We are also of the opinion that the evidence was competent. It was, under the allegations of the complaint, admissible to prove that the defendant was guilty of negligence, and it was also clearly proper for the jury to consider in determining whether the plaintiff was without fault, which was the principal controverted point in the case. The rate of speed within the city being prescribed by a public law, the plaintiff, in determining whether it was safe and prudent for him to attempt to cross the railroad track, had the right to assume that the defendant would comply with such ordinance. It might have been safe for the plaintiff to have attempted to cross the track of defendant's road if the cars only ran at the rate of four miles an hour, while it would have been unsafe and reckless to have made such attempt if the cars were being run at a much greater rate of speed.

We are very clearly of the opinion that the court committed no error in admitting the ordinance in evidence, and in refusing to instruct as requested. We have, upon the petition for rehearing, again fully considered all the questions in the case, and are entirely satisfied with the judgment heretofore rendered.

The petition is overruled.

*T. A. Hendricks, O. B. Hord,* and *A. W. Hendricks,* for appellant.

*J. W. Gordon, J. R. Troxell, J. Hanna,* and *F. Knefler,* for appellee.