NOVEMBER TERM, 1893. 181

The Louisville, New Albany and Chicago Ry. Co. v. Berkey, Admr.

No. 16,308.

The Louisville, New Albany and Chicago Railway Company v. Berkey, Administrator.

Railroad.—*Expert Testimony.*—*Coupling-Pin.*—*Draw-Bar.*—*Death of Employe by Breaking of Coupling-Pin.*—In an action for damages, against a railroad company, for the death of an employe, a brakeman, caused by the breaking of a coupling-pin, alleging the accident to be due to the inferior quality of the material in the pin and of the defective condition of the pin and the draw-bar, the testimony of witnesses, as experts, as to the strength and quality of the coupling device, the breaking of which caused the accident, is competent, the testimony being elicited from witnesses who were experienced blacksmiths. And a witness who had worked upon a section about three years, and subsequently as a brakeman for eighteen months, and claimed to possess some knowledge of the different grades of iron from such experience, was competent to testify as an expert, in relation to such matter.

Same.—*Evidence.*—*Rules of Company.*—In an action against a railroad company by the representative of a deceased employe, for damages caused by his death, printed rules of the company, which it is claimed the deceased wrongfully disregarded, are not admissible in evidence, where the evidence shows that the deceased never was in possession of such rules and knew nothing of them. And the fact that a fellow-servant had knowledge of such rules can not make them admissible.

Master and Servant.—*Liability of Master for Negligence of Fellow-Servant.*—The rule which absolves the master from liability for the negligence of a fellow-servant has no application whatever where the agent stands in the master's place, because, in such case, the duty which he owes to the servant is one of which he can not rid himself by casting it upon an agent, officer, or servant employed by him; and the officers and agents of a corporation are charged with the master's duty.

Same.—*Defective Appliances.*—*Burden of Proof.*—Where it is shown that the master or his agent has placed defective appliances in the hands of his servant, which occasion injury to the servant while in the exercise of due care and caution, the burden shifts, and the master is then required to show that he exercised due care in their selection and manufacture.

Special Finding.—*Sufficiency of.*—*Evidence.*—*Conclusions of Law.*—*Judgment.*—A special finding must state the ultimate or inferential

The Louisville, New Albany and Chicago Ry. Co. v. Berkey, Admr.

facts established on the trial, and if evidentiary facts or conclusions of law be commingled therewith, the finding will be sufficient, if, when stripped of such improper matter, it will support a judgment within the issues.

PLEADING.—*Negligence.*—*Complaint.*—*General Allegation.*—In an action to recover damages on account of the negligent doing of an act, it is sufficient to allege that the act was negligently done, without stating the particular acts constituting the negligence; but such allegation may be made more specific, upon motion to that effect.

From the Orange Circuit Court.

*E. C. Field* and *W. S. Kinnan,* for appellant.

*J. A. Zaring, M. B. Hottel, S. H. Mitchell* and *R. B. Mitchell,* for appellee.

DAILEY, J.—This case rests substantially on the following facts:

The appellee's intestate, Hays, was in appellant's employ as a brakeman.   On the 16th day of August, 1890, a train crew consisting of John Smith, engineer; a fireman, whose name is not furnished us; David Welch, conductor; Granville Hays and Melville Hays, brakemen, took a through freight train of appellant, at Bloomington, Indiana, to run it to New Albany.   At the station of Harrodsburg, about twelve miles south of Bloomington, this train was laid out for three or four hours on a siding, waiting, under orders, for other trains to pass. After running south from said station a short distance, probably one or two train lengths, which was about 12 o'clock at night, the engine attached to and hauling the train of cars broke loose where the engine tank was coupled to the car next thereto.   The pin broke which was used for making the coupling.   Melville Hays was the front brakeman, and was at his place on the train, and near the end thereof, when the train separated.   By the severing of the train, the deceased was thrown to the ground with great force, run over by the appellant's

cars, and thereby mashed, mangled, and bruised, from which injuries he instantly died.

The cause of Hays' injury and death is set out in the special verdict returned by the jury, as follows:

"7. That the separation and breaking loose of the engine and tender from the remainder of said freight train was the result of the carelessness and negligence of the defendant in this, to wit: The defendant had carelessly and negligently furnished and used in the coupling together of said train defective coupling apparatus, namely, they furnished and used in the coupling of said engine and tender on the car immediately behind it a coupling pin which was made out of an inferior grade of iron, and which had flaws and defects therein that rendered it insufficient for the said purpose for which it was used, and the defendant's said car to which said engine and tender was coupled and attached had a defective drawbar, through which said coupling pin fastening the engine thereto passed, the hole or slot in which and through which said pin passed being so worn and enlarged that it permitted said pin to turn therein and allowed said engine to pull against the flat side thereof.

"8. That said coupling pin used in said defective coupling apparatus was flat, and when properly placed and held in the slot of the draw-bar, through which it passed, the force and power of the engine and the weight of the train pulled against the edges and not against the flat side of the pin, and that the strength of said pin when in such proper position was almost double that of the flat side thereof.

"9. That the inferior grade of the iron out of which said coupling pin was made, and the defects and flaws therein, and the said defective condition of the drawbar of said car, could have been discovered by the defendant, upon a proper examination by it of its coupling

184    SUPREME COURT OF INDIANA,

The Louisville, New Albany and Chicago Ry. Co. v. Berkey, Admr.

apparatus, and defendant had the time and opportunity to make such examination.

"10. That said accident of the separation of said engine from the remainder of said freight train, which resulted in the death of said plaintiff's decedent, was wholly and directly the result of said defective coupling apparatus of said defendant's said freight train.

"11. That the plaintiff had been employed as a brakeman only twelve days prior to said accident, and was inexperienced in railroading, and could not, in the night time, have discovered said defective condition of said coupling apparatus of the defendant's said freight train, and said decedent knew nothing of the defective condition thereof.

"12th. That plaintiff's decedent in no way contributed to said accident, or his death resulting therefrom, but was wholly without fault or negligence on his part."

The special verdict, it will be observed, finds and specifies three separate and distinct acts of negligence against appellant, viz:

1st. It furnished and used a coupling pin made out of an inferior grade of iron.

2d. It furnished and used a coupling pin having flaws and defects, which rendered it insufficient.

3d. The tender to which the car was coupled had a defective draw-bar, in that it was so worn and enlarged that the coupling pin would turn therein, allowing the strain to fall upon the flat side of the pin.

In this case, there was a judgment rendered on the special verdict for appellee in the sum of four thousand five hundred dollars.

The following errors are assigned:

1. The complaint does not state facts sufficient to constitute a cause of action.

2. The court erred in overruling the demurrer to the

The Louisville, New Albany and Chicago Ry. Co. *v.* Berkey, Admr.

first and second paragraphs of the complaint, and each of them.

3. The court erred in overruling the motion for a *venire de novo*.

4. The court erred in overruling appellant's motion for judgment in its favor on the special verdict.

5. The court erred in overruling the motion for a new trial.

Counsel, in their argument, have discussed the first, second, and fifth assignments, and under the well established rule of this court, the assignments of error as to the third and fourth will be considered as waived. *Burk* v. *Hill*, 55 Ind. 419; *Western Union Tel. Co.* v. *Ferris*, 103 Ind. 91.

Under the last assignment of error, counsel's argument in this cause is directed mainly to the seventh reason for a new trial, viz: "Because the special verdict is not sustained by the evidence."

The special verdict of the jury and the evidence in support of it are in the record. We have carefully examined the transcript, and find that the facts set out therein are supported by a number of witnesses, who testify that the coupling pin was made out of an inferior grade of metal, and that it contained flaws and defects, and was very much worn and smaller than the regular size.

There is also evidence tending to show that when the draw-bar was in good order and not worn, it would not allow the coupling pin to turn and draw against the flat side, and that the pin could not be placed in the slot of the draw-bar but the one way, if the machinery were in condition and the draw-bar not worn or enlarged. This would indicate that the cavity or slot through the bar was so worn and increased in dimensions as to permit the pin to turn therein.

Appellant recognizes the well settled rule that if there

is any evidence that tends to support the finding of the court or the verdict of the jury, although the preponderance of the evidence may seem to be against it, this court will not reverse the judgment on the evidence. *Lane* v. *Brown,* 22 Ind. 239; *Shank* v. *State,* 25 Ind. 207; *Madison, etc., R. R. Co.* v. *Taffe,* 37 Ind. 361; *Evansville, etc., R. R. Co.* v. *Tipton,* 101 Ind. 197; *Wabash R. W. Co.* v. *Savage,* 110 Ind. 156; *Isler* v. *Bland,* 117 Ind. 457.

The competency of the line of testimony introduced by appellee relating to the quality and condition of the coupling-pin which broke and occasioned the death of the decedent, was challenged below and is questioned here on the ground, first, that the witnesses did not qualify themselves to so testify, and, secondly, that the inquiry was not the subject-matter of expert testimony, and hence was incompetent; that the jury can tell as much about whether a piece of iron has a flaw in it as they could possibly do.

"The rule is, that the opinions of experts or skilled witnesses are admissible in evidence in those cases in which the matter of inquiry is such, that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject-matter so far partakes of the nature of a science, art or trade, as to require a previous habit, or experience or study in it, in order to acquire a knowledge of it. When the question involved does not lie within the range of common experience, or common knowledge, but requires special experience, or special knowledge, then the opinions of witnesses skilled in the particular science, art or trade to which the question relates, are admissible in evidence." Rogers on Exp. Test., section 6, pages 19 and 20.

The same author says, in section 120, pages 277 and

278: ''From what has been stated it appears that the opinions of persons skilled in any trade or calling are experts as to matters of technical skill relating to their trade or calling, and their testimony may be received as such in evidence. In the preceding section of this chapter, attention has been called to the application which has been made of this principle in respect to certain trades, but the principle is equally applicable in all trades and callings where the question at issue is technical and not within the common experience of men in general. Thus the  *  *  *  opinions of persons having a peculiar and special knowledge of iron, upon the question of the quality and strength of iron, the breaking of which caused an accident.''

It is also the rule that ''any witness, not an expert, who knows the facts personally, may give an opinion in a matter requiring skill, stating also the facts upon which he bases that opinion.'' *City of Indianapolis* v. *Huffer*, 30 Ind. 235 (237).

The testimony so earnestly objected to in this case is that of a series of witnesses as to the inferior quality of the iron in the coupling-pin and its worn and flawy condition. Most of this testimony was elicited from witnesses who were experienced as blacksmiths in handling and working all the various grades of iron and steel for a series of years, and whose tests would imply skill and facility upon the question of the quality and strength of the device, the breaking of which caused the accident. Another of the witnesses had worked upon a section about three years, and subsequently as a brakeman for eighteen months, and claimed to possess some knowledge of the different grades of iron from his experience in handling it, and who gave it as his opinion that the coupling-pin in controversy was made out of malleable iron.

We think he was competent to testify in relation to

this matter.    It was for the jury to determine the weight of such testimony.

Appellant complains of what is styled "a most palpable error of the trial court," in refusing to permit in evidence the rules of the company, which enjoined upon the trainmen the duty of inspecting the couplings before attaching cars or engines, so as to know the kind and condition of the drawbars, links, and coupling apparatus, and prohibited their use without first reporting the fact to the conductor.

This evidence is insisted upon on the theory that decedent's twin brother, a co-employe in the same service, was aboard the train and knew the rules, and that it is a good defense to show that the injury complained of resulted from the negligence of a fellow-servant.

"It is the duty of an employer to make and promulgate rules, which, if faithfully observed, will give reasonable protection to his employes; and whether he is negligent in that respect in a given case is a question for the jury."    14 Am. and Eng. Encyc. of Law, pages 907–908.

"Of course * the rules and regulations of an employer must be known to the employe in order to bind him." Same, pages 908–909.

It seems to be settled law that "In an action against a railroad company for damages for negligently causing the death of one of its employes, it is not error for the court on the trial to exclude evidence offered by the railroad company to prove certain written or printed rules, which, it claims, deceased wrongfully disregarded, when it is not shown that the deceased ever had any knowledge of such written or printed rules."    14 Am. and Eng. Encyc. of Law, 909, citing *Atchison, etc., R. R. Co.* v. *Plunkett, Admr.*, 25 Kan. 188, 2 Am. and Eng. R. R. Cas. 127.

The evidence in this case shows that the deceased never was in possession of such rules, and knew nothing of them, and we think the court did not err in excluding the evidence that was offered. We are also persuaded that the case under consideration is not one where the doctrine of a fellow-servant's contributory negligence applies.

The rule laid down in *Boyce* v. *Fitzpatrick*, 80 Ind. 526, is applicable here, which is, that "While a servant assumes the risk, more or less hazardous, of the service in which he engages, he has a right to assume that all reasonable attention will be given by his employer to his safety, so that he will not be carelessly and needlessly exposed to risks which might be avoided by ordinary care and precaution on the part of his employer, and where, in the absence of such care and precaution, an employe is injured, the employer is liable, although the negligence of a fellow-servant contributed to the injury complained of." We also cite *Mitchell* v. *Robinson*, 80 Ind. 281, in support of this doctrine.

"When an injury is occasioned to a servant, partly through a defect in the machinery, track, or apparatus of the master, and partly through the negligence of a fellow-servant, the master is not exonerated from liability." 7 Am. and Eng. Encyc. of Law, p. 828, and numerous cases there cited.

"The master, whether a natural person or a corporation, although not to be held as guaranteeing the absolute safety or perfection of machinery or other apparatus provided for the servant, is bound to observe all the care which the exigencies of the situation reasonably require, in furnishing the instrumentalities adequately safe for use." 7 Am. and Eng. Encyc. of Law, p. 825.

"It is the duty of a master, not only in the first instance to make reasonable efforts to supply his employes

safe and suitable machinery, tools, etc., but also there-after to make like efforts to keep such machinery, etc., in safe and serviceable condition; and to that end he must make all needed inspections and examina-tions." 7 Am. and Eng. Encyc. of Law, 830, and cita-tions.

The master, being required to perform these duties, the person who discharges them, no matter what his rank or grade, or by what name he may be designated, is an agent and not a servant, and the rules applicable to principal and agent apply. The agent is, in the eyes of the law, the master. The act of the agent is the act of the master. The rule which absolves the master from liability for the negligence of a fellow-servant has no ap-plication whatever where the agent stands in the master's place, because, in such case, the duty which he owes to the servant is one of which he can not rid himself by casting it upon an agent, officer, or servant employed by him. *Indiana Car Co.* v. *Parker*, 100 Ind. 191; 7 Am. and Eng. Encyc. of Law, 824; 2 Thompson on Neg., section 10, p. 981.

The servant does not agree to take the chances of any negligence on the part of his employer.

"Where the master is a corporation, its officers and agents are charged with a master's duty." 14 Am. and Eng. Encyc. of Law, 875.

While there is evidence in the record tending to show that appellant kept an inspector who performed the serv-ice generally, and ran over the car wheels, draw-bars, pins, links and doors at Lafayette, there is no direct evi-dence that he examined the particular appliances about which complaint is made and found them in condition; that duty was certainly omitted or discovery of the de-fects would have been made. From the evidence, we infer that they were of long standing, because the pin

and draw bar were badly worn. In view of their con-
dition, as disclosed by the testimony, the jury had a
right to infer, as a fact, that the unfitness of the appli-
ances must have been known to the master, or must
have been such as, with reasonable diligence and atten-
tion to business, it ought to have known.

Appellant challenges the sufficiency of the ninth spe-
cification of the special verdict, which is already set out
in this opinion, and urges that there is no finding of
facts respecting appellant's knowledge or notice of the
defects complained of, and that the finding simply sets
forth the conclusion of the jury, but not a solitary fact
from which the inference necessarily arises.

In Elliott's App. Proced., section 753, the author
says: "A special verdict must find the ultimate or in-
ferential facts, and no mere matters of evidence or evi-
dentiary facts, so that where the ultimate facts are not
found, the party who has the burden will fail. If, how-
ever, the ultimate facts are stated in the verdict, the
presence of evidence, or of evidentiary facts, will not
vitiate it, since such matters may be disregarded and the
judgment rendered on the facts."   ·

In support of this view, the learned author cites a long
list of authorities.

Evidence or conclusions of law inserted in a special
verdict will not be heeded, and if, stripped of improper
matter, the verdict is yet sufficient to support a judg-
ment either way under the issues, a motion for a *venire
de novo* will not lie. *Indiana, etc., R. W. Co.* v. *Finnell*,
116 Ind. 414; *Louisville, etc., R. W. Co.* v. *Green*, 120
Ind. 367.

We are inclined to agree with counsel, in their conten-
tion that the statements in the ninth finding of facts are
mere legal conclusions, but we can not concur in the
notion that this is fatal to the special verdict. If it were

altogether eliminated therefrom, there would yet remain therein sufficient facts properly found to justify the court in drawing the conclusion that the appellant did have notice or knowledge of the worthless character of the coupling-pin that caused the death of appellee's intestate.

The statements in the seventh specification, that "the defendant had * * * furnished and used in the coupling together of said train defective coupling apparatus, namely, they furnished and used in the coupling of said engine and tender onto the car immediately behind it, a coupling-pin which was made out of an inferior grade of iron, and which had flaws and defects therein that rendered it insufficient for the said purpose for which it was used," are recitals of inferential facts of a controlling feature in this case.

This court, in *Pittsburgh, etc., R. W. Co.* v. *Adams*, 105 Ind. 151 (163), which was an action for damages for personal injuries to an employe on account of a defective rail, says: "If the case before us is to rest alone upon the alleged negligence of appellant as connected with the alleged defective rail, then it must be shown that the rail was so defective when put in place by appellant, or, if it afterwards became worn and defective, that appellant knew of the defective and dangerous condition, or that it was defective and dangerous for such a length of time that appellant might and ought to have known of it by the exercise of reasonable attention, care and diligence."

The court further said: "If the jury had found, *as a matter* of fact, that appellant *put down a defective and dangerous* rail, or that it had actual knowledge of the defective rail, or had found and stated the length of time that it had been defective, and such other facts, if any, as surround the case, their verdict would have been a

The Louisville, New Albany and Chicago Ry. Co. *v.* Berkey, Admr.

verdict of facts, and the court might then have de-
clared, * * as a matter of law, that appellant was
or was not guilty of negligence as connected with the
rail.''

So, in the case under consideration, by like reasoning,
the jury having found as a matter of fact that the appel-
lant *furnished and used* in the coupling of said engine
and tender onto the car immediately behind it, a coup-
ling-pin which was made out of an inferior grade of iron,
and which had flaws and defects therein that rendered it
insufficient for the said purpose for which it was used,
their verdict is a verdict of facts in its essential features,
and the court might or might not have declared, as a
matter of law, that this defendant was guilty of negli-
gence.

There is a multitude of authorities to the effect that
''one of the most important obligations on the part of
the master is to furnish his servant with such appli-
ances for his work as are suitable and may be used with
safety; and this, by implication of the law, is a stipula-
tion in every contract for service; and if the servant is
injured by reason of defective appliances placed in his
hands by the master or his agent, the master is liable for
damages, unless he can clearly show that he has used
due care in the selection or manufacture of the same.''
14 Am. and Eng. Encyc. of Law, 877 and 878, and
note 1.

The rule appears to be that when it is shown that the
master or his agent has placed defective appliances in the
hands of his servant, which occasioned his injury while
in the exercise of due care and caution, the burden shifts,
and the master is then required to show that he exercised
due care in their selection or manufacture.

Under the first and second assignments of error, ap-
Vol. 136—13

pellant attacks the sufficiency of the second paragraph of the complaint, but offers no criticism as to the first, which avers notice and knowledge to the appellant, while it is insisted that the last paragraph contains no such averment, but only alleges the conclusion that it might have known.

We think the paragraph is not open to this objection, because, among a number of averments which it contains, is the following: "That old, worn out, and defective cars with insecure and defective couplings and appliances were by said defendant  *  *  *  placed in said train; that the bolt or pin used in coupling said cars at the point where they broke in two, as aforesaid, was made of inferior and unsound iron."

It also contains some general averments alleging the carelessness and negligence of the master.

In an action to recover damages on account of the negligent doing of an act, it is sufficient to allege that the act was negligently done, without stating the particular acts constituting the negligence. *Indianapolis, etc., R. R. Co.* v. *Keeley's Admr.*, 23 Ind. 133; *Indianapolis, etc., R. R. Co.* v. *Hamilton*, 44 Ind. 76; *Ohio, etc., R. W. Co.* v. *Selby*, 47 Ind. 471; *Cleveland, etc., R. W. Co.* v. *Wynant*, 100 Ind. 160; *Louisville, etc., R. W. Co.* v. *Cauley*, 119 Ind. 142.

"A complaint in an action for negligence is not subject to demurrer because the charge of negligence is general, but a motion to make the charge more specific is the proper remedy." *Cleveland, etc., R. W. Co.* v. *Wynant, supra; Boyce* v. *Fitzpatrick, supra.*

We think the learned counsel are in error in assuming that the special verdict rests on the second paragraph of the complaint. It seems to us that it is based as much upon the first paragraph alleging that defendant knew

of the defect in the coupling-pin which it furnished appellee's decedent.

Even error in ruling on a demurrer to one paragraph of a complaint will not be available if it affirmatively appears that the finding was on another paragraph. *Barnett* v. *Feary*, 101 Ind. 95.

We find no error in the record, that should reverse the case.

Judgment affirmed.

Filed Oct. 31, 1893; petition for a rehearing overruled Jan. 5, 1894.