## PATTERSON v. SOUTHERN RAILWAY COMPANY OF INDIANA ET AL.

[No. 7,656. Filed October 15, 1912. Rehearing denied January 31, 1913. Transfer denied March 6, 1913.]

1. TRIAL.—*Directed Verdict.*—The trial court may direct a verdict for defendant only where the evidence most favorable to the plaintiff, together with all reasonable and legitimate inferences that a jury might draw therefrom, is clearly insufficient to establish one or more facts essential to plaintiff's right of action. p. 620.

2. MASTER AND SERVANT.—*Places of Work.—Tools and Appliances. —Duty of Master.—Delegation of Duty.*—The master's duty of providing a reasonably safe place for the servant to work, and safe tools and appliances with which to work, is a continuing one and cannot be delegated by him to an employe so as to avoid responsibility for its violation. p. 623.

3. MASTER AND SERVANT.—*Negligence.—Vice Principal.*—An employe, regardless of his rank or grade, who is authorized to perform a duty which is clearly the master's duty, is to that extent a vice principal and his act is the act of the master, and, in determining the master's liability for his negligence, the controlling inquiry is whether his act or omission involved a duty owing by the master to the injured servant. p. 623.

4. MASTER AND SERVANT.—*Injury to Servants.—Negligence.—Fellow Servants.*—Where workmen, in the construction of a bridge, erect a scaffold on their own initiative and for their own convenience, and the order of the foreman directing the building of same was merely an executive detail of the work, the foreman is a fellow servant for whose negligence in such construction the master is not liable. p. 624.

5. MASTER AND SERVANT.—*Injury to Servants.—Fellow Servants.— Jury Question.*—In an action by a servant for personal injuries sustained by the falling of a temporary scaffold erected on the side of a railroad fill, on which ties were being prepared to use in the construction of a railroad bridge, where there was evidence that during the three years that plaintiff was employed by defendant as a bridge carpenter such platforms were always constructed under the direction of the foreman, that it was usual and customary, in erecting such platforms on the side of a fill, to make secure the ends of the stringer ties next to the track to keep the structure from tipping, and that plaintiff believed the platform was thus made secure when he went upon it, the court was not warranted in directing a verdict for defendant, but the question of whether such evidence warranted the conclusion that the erection of such platforms was a part of defendant's general plan of operation under similar conditions, so as to render the negligence of the foreman in directing the construction of the platform that of a vice principal should have gone to the jury under proper instructions of the court. p. 625.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by John W. Patterson against the Southern Railway Company of Indiana and another. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*R. W. Armstrong,* for appellant.

*Alex P. Humphrey, Edward P. Humphrey, John D. Welman* and *Thomas Duncan,* for appellees.

ADAMS, P. J.—This action was brought by appellant against appellees, to recover damages for personal injuries sustained by appellant while in the service of appellee Southern Railway Company, and was based on a common-law right.

At the conclusion of appellant's evidence the court directed the jury to return separate verdicts in favor of each defendant. Verdicts were accordingly returned, and judgment rendered thereon.

The only error assigned is that the court erred in overruling appellant's motion for a new trial, and the only error relied on for reversal is that the court erred in giving the peremptory instruction. Whether or not this was error depends on the evidence given in the cause on behalf on plaintiff.

It is a settled rule in this State that the right of the court to direct a verdict for a defendant can only be upheld where, after a consideration of all the evidence most

1. favorable to the plaintiff, together with all the reasonable and legitimate inferences which the jury might have drawn therefrom, it can be said that the evidence is clearly insufficient to establish one or more facts essential to plaintiff's right of action. *Gregory* v. *Cleveland, etc., R. Co.* (1887), 112 Ind. 385, 388, 14 N. E. 228; *Wolfe* v. *McMillan* (1888), 117 Ind. 587, 593, 20 N. E. 509; *Diezi* v. *G. H. Hammond Co.* (1901), 156 Ind. 583, 588, 60 N. E. 353; *Davis* v. *Mercer Lumber Co.* (1905), 164 Ind. 413, 425, 73 N. E. 899.

The facts disclosed by the evidence show that appellant was a bridge carpenter, and, as such, had been in the service of the Southern Railway Company for three years, and during the entire time of his employment was under appellee Teaford, who was foreman of the bridge gang. Teaford

had been in the employ of the railway company as foreman and bridge carpenter for twenty years. Appellant's duties were general, doing whatever he was directed to do. In February, 1909, the railway company was repairing a certain bridge, by redecking the same, which was done by placing new stringers and ties thereon. The company had delivered on the right of way, at or near the bridge, sawed timbers of proper size and quality, which were to be dressed by the carpenters and placed in the structure. About twenty men were employed in this work, who were under the general direction of Teaford. Immediately east of the bridge was a fill of six or eight feet, about thirteen feet wide at the top, and on which there was a rock ballast of twenty inches.

On the day of appellant's injury he was working at the north side of the track, ninety or one hundred feet east of the point where he was injured. Teaford directed two of the men to build a scaffold, on which bridge ties were to be dressed and made ready for use, and was present while the same was being built. Such platforms were always constructed under the direction of the foreman. This particular scaffold was erected on the south side of the track by placing two bridge ties one on top of the other on the side of the fill parallel with the track. Two ties were then laid from the top of the foundation ties, the north ends resting on the shoulder of the fill and the south ends extending over the foundation ties three or four feet. These ties or stringers were four or five feet apart, and on them were placed twelve or thirteen other ties, to be dressed and prepared for use. These ties completely covered the stringer ties. Two men working at the north end of the scaffold marked the ties, and after marking turned them back to the south to two other men, who sawed the ties as indicated by the marks. When properly sawed, the ties were turned over to the south to the adz men, who worked at the south end of the scaffold. The foundation ties as well as the

stringers and the ties in course of preparation for use, were all eleven feet in length. Appellant was one of the two adz men, who worked at the south end of the scaffold. He did not see how far the stringers projected over the foundation ties at the time he went on the scaffold, and did not see how the stringers were placed on the foundation ties, on account of the ties, placed thereon for dressing, completely covering the stringers. Appellant had been working at the south end of the scaffold about twenty-five minutes, when the same by reason of increased weight, tipped, throwing him down the embankment, and resulting in injuries for which this action is brought. The stringer ties were not anchored at the north end or supported at the south end, except by the foundation ties.

At the time appellant went on the scaffold he believed that the stringer ties had been anchored or made secure at the north end. During all the time of his service with appellee, appellant had never seen a platform erected at a similar place that was not fastened to the ground. It was usual and customary in constructing a platform at a place of this kind to make secure the ends next to the tracks, to prevent tipping. Before appellant went on the scaffold, the bridge foreman, Teaford, said to him: "Get your adz, and go to adzing; the scaffold is ready." He then walked to the west on the north side of the track, secured his adz, which was lying almost north of the scaffold, crossed over the track, and commenced work. The scaffold was an improvised structure, which required about twenty minutes in building, and was designed as a place where ties placed thereon could be dressed, and would not be in use for more than two hours.

The only question presented and argued by appellant in his brief pertains to the status of Teaford. Was he the representative of the master and a vice principal in the erection of the scaffold, or was he a fellow servant with appellant, engaged in the same general undertaking? Was he

discharging a duty which the master owed to the servant, or was he performing a duty which the servant owed to the master? These questions are generally not free from doubt. The difficulty is not in applying the law when the relation is definitely shown, but in applying the law to the conceded facts in determining the relation.

We think no good purpose would be served by an extended review of the decided cases, and by adding to the confusion which already exists in the texts and decisions relative to who are and who are not fellow servants. This seeming confusion clearly arises from the extent and variety of the facts on which rules have been declared and applied, and it is not surprising that no certain and definite test can be applied in all cases. Out of the confusion, however, some general principles may be gathered which are fundamental in the determination of all cases presenting the fellow servant question.

It is recognized that the primary duty of providing a reasonably safe place for the servant to work, and safe tools and appliances with which to work is on the master, and this duty is a continuing one, which the master cannot delegate to an employe and escape responsibility. If this duty is so delegated, the employe, no matter what his rank or grade may be, becomes a vice principal and not a fellow servant, and his act is the act of the master. *Dill* v. *Marmon* (1905), 164 Ind. 507, 512, 73 N. E. 67, 69 L. R. A. 163; *Thacker* v. *Chicago, etc., R. Co.* (1902), 159 Ind. 82, 64 N. E. 605, 59 L. R. A. 792; *Federal Cement Tile Co.* v. *Korff* (1912), 50 Ind. App. 608, 97 N. E. 185; *Standard Oil Co.* v. *Bowker* (1895), 141 Ind. 12, 18, 40 N. E. 128; *Indiana, etc., R. Co.* v. *Snyder* (1895), 140 Ind. 647, 655, 39 N. E. 912; *Louisville, etc., R. Co.* v. *Berkey* (1894), 136 Ind. 181, 190, 35 N. E. 3; *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181, 191, and cases cited.

In 3 Elliott, Railroads §1317, it is said: "The term

'vice principal' is generally used to denote an employe to whom the employer has entrusted the performance of a duty which the law requires the employer himself to perform. We think that a superior agent or vice principal is an employe who is entrusted generally with the performance of the master's ·duties, or is entrusted with the performance of some of the master's duties, although he may not be entrusted with all the duties of the employer. We believe that were the· duty 'which the law imposes on the employer is entrusted to an employe, the employe is a vice principal as to that duty, although the matter to which it relates may not be in the strict sense a general one.'' This definition is' quoted and approved in *Cleveland, etc., R. Co.* v. *Foland* (1910), 174 Ind. 411, 416, 91 N. E. 594; 92 N. E. 185. It is also quoted, but questioned, in *Peirce* v. *Oliver* (1897), 18 Ind. App. 87, 97, 47 N. E. 485. But whatever difference of opinion may exist as to the definition of vice principal, all authorities agree that an employe authorized to perform a duty which is clearly the master's duty is, to· that extent, a vice principal, and the controlling inquiry must be whether an act or omission resulting in an injury involved a duty owing by the master to the injured servant. *Justice* v. *Pennsylvania Co.* (1892), 130 Ind. 321, 30 N. E. 303; *Thacker* v. *Chicago, etc., R. Co., supra,* and cases cited.

In the case under consideration, the general order of the master was to repair the bridge by redecking it, and to that end, as far as appears, the master furnished . materials of approved quality, and delivered the same on the right of way at or near the bridge. If the scaffold was constructed on the initiative of the workmen, and to suit their own convenience, and if the order of the foreman directing the building of the same was but mere executive detail of the work, then, under well-established rules, Teaford was a fellow servant for whose negligence the master would not be liable. *Cleveland, etc., R. Co.* v. *Foland, supra; Indianapolis Traction, etc., Co.* v.

*Kinney* (1909), 171 Ind. 612, 622, 85 N. E. 954, 23 L. R. A. (N. S.) 711; *Haskell & Barker Car Co.* v. *Przedzianlcowslci* (1908), 170 Ind. 1, 10, 83 N. E. 626, 14 L. R. A. (N. S.) 972, 127 Am. St. 352; *Indianapolis St. R. Co.* v. *Kane* (1907), 169 Ind. 25, 30, 80 N. E. 841, 81 N. E. 721; *Dill* v. *Marmon, supra,* 515; *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 700, 68 N. E. 262, 63 L. R. A. 460; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280, 287, 66 N. E. 886.

If, however, by taking the evidence most favorable to appellant and indulging every reasonable and legitimate inference which a jury might draw therefrom, it cannot

5. be said as a matter of law that appellant and Teaford were fellow servants, then the court erred in giving the peremptory instruction, and in withdrawing the case from the jury. Appellant testified, as we have seen, that for three years prior to his injury he was employed by the railroad company as a bridge carpenter; that during the time of his service these platforms were always constructed under the direction of the foreman, and that it was usual and customary in the building of a platform on the side of a fill to make secure the ends of the stringer ties next to the track to keep the structure from tipping. He also testified that he had never seen a platform at such a place that was not so secured, and that he believed it was thus made secure when he went on it.

There was, therefore, some evidence before the jury that platforms of the kind and character, and used for the same purpose, as the one in this case, were used in appellee's bridge work, where timbers were to be prepared on the side of an embankment. And if it was customary, as the evidence indicates, to erect such platforms at such places in the prosecution of appellee's work, then the erection of the platform in this case was not a mere executive detail of the work, but was a part of appellee's general plan of

operation under similar conditions. The rule would then apply that the master is bound to provide the servant a reasonably safe place in which to work, and if this primary duty was delegated in this case to Teaford, the foreman, the act of Teaford was the act of the master. Whether the evidence was strong enough to warrant such a conclusion was not a matter for the determination of the court, but should have gone to the jury, under proper instructions by the court.

For error in giving the peremptory instruction, the judgment is reversed and the cause remanded, with instructions to the trial court to sustain appellant's motion for a new trial.

NOTE.—Reported in 99 N. E. 491. See, also, under (1) 38 Cyc. 1576; (2) 26 Cyc. 1104; (3) 26 Cyc. 1318; (4) 26 Cyc. 1329; (5) 26 Cyc. 1474. As to court's invading jury's province by instructing on matters of fact, see 14 Am. St. 36. As to master's duty to provide safe appliances and places for servant, see 33 Am. St. 766. As to master's delegation of duty see note to *Brazil Block Coal Co*. v. *Gibson* (Ind.), 98 Am. St. 300. As to fellow-servant rule and who are vice principals, see 75 Am. St. 584. For vice principalship considered with reference to rank of superior servant, see 51 L. R. A. 513. On the question of vice principalship as determined with reference to character of act causing injury, see 54 L. R. A. 37. On the duty of a master to furnish safe appliances as affected by fact that defective appliances are prepared by fellow servants, see 4 L. R. A. (N. S.) 220. As to the liability of a master for injuries to a servant caused by the fall of scaffolding, see 18 Ann. Cas. 611; Ann. Cas. 1913 B 1123.