MAY TERM, 1894.                    691

The Louisville, New Albany and Chicago Railway Company *v.* Isom.

Filed Oct. 30, 1894.

———————————◆———————————

No. 1,054.

LOUISVILLE, NEW ALBANY AND CHICAGO RAILWAY COMPANY *v.* ISOM.

RAILROAD.—*Negligence.*—*Injury of Employe by Negligence of Foreman.*
—Where a railroad employe, a member of a section gang, was injured while engaged in loading rails on a car, by the alleged negligence of the foreman while engaged in the same service, the negligence of his foreman, if any, in such case, was that of a fellow-servant in the discharge of a duty owing to the master.

From the Monroe Circuit Court.

*E. C. Field* and *W. S. Kinnan,* for appellant.

*M. F. Dunn, J. R. East* and *R. G. Miller,* for appellee.

DAVIS, J.—In this action appellee recovered judgment in the court below for three thousand dollars for personal injuries alleged to have been sustained by him through

negligence of appellant, without fault on his part. Several errors have been assigned, but in view of our conclusion that appellee, under the most favorable consideration of the evidence, is not entitled to recover, we will only consider the ruling of the trial court on the motion for a new trial. The appellee testified as follows:

"My name is Thomas Isom; am twenty-seven years old; on the morning of March 18, 1891, I was ordered to go out and load T rails with Lew. Utterbach; Utterbach was the foreman of a gang which he had; he had charge of a gang of men to load T rails or old iron on the narrow gauge road; I had known Utterbach before that; I never worked under him before; I was in the employ of Phil. Magill, who was the section foreman on the narrow gauge; foreman of the section gang that kept up the track along there; I had worked under him from the 9th of October, 1890; from the 9th of October, 1890, up to March, 1891, I was engaged in taking out cross-ties, and putting in common standard ties, and tamping or raising the track; for this work I received $1.10 per day; this work was done for the Louisville, New Albany and Chicago Railway Company.

"The morning of March 18, Lew. Utterbach asked Phil. Magill for two or three of his men to go with him and load T rails, as he didn't have enough men to load the rails he had to load, and Magill sent me and two other men to help him; Magill was the man that hired me; Bud Bruce and Coleman went with me to help Utterbach do this work; we picked up the rails and loaded them on the car from Reed's station up towards Bedford. At the time of the accident they stopped the train where the rails were; the rails were lying on the ground just as they were pulled out of the track by the trackmen; they drew the spikes out, and the old rails were placed at the side of the track; they placed new rails

down after taking old rails out. We were sent out with the train to take up these old rails that were scattered on each side of the road; the conductor stopped the train so as to try and load two rails at each stop; when the train stopped we all got off and picked up this rail; I don't know how long the rail was; I don't think it was hardly a whole rail, or over two-thirds of a rail; Utterbach ordered us to pick it up; he was at the time standing on a flat car west of the one we had to throw this rail on; he was where he could see us and the condition of the ground; he was not far from us, only just over us; he was on top of the car, and the ground where we were was sloping down from the railroad, and it was a low, bad place to stand, and behind us was a gully which a person had to jump tolerably hard to jump across; it was probably four feet deep; I do not recollect how close this gulley was to the track; I think it was about six feet; when I heard the rail coming I started to get out of the way.

"Lew. Utterbach ordered us to pick up that rail and throw it on top of the car; the car was then half loaded with T rails we were throwing up there. Utterbach was standing on the car west of the flat car we were loading, standing on the end of it, out of danger. Utterbach didn't touch the rail at that time. The hands threw the rails up; when we threw that rail up on the car it lit across those rails on the car and one end hung. After the rail stopped, Utterbach took hold of the end of the rail to throw it around to straighten it, and it rolled off the car and struck me on the shoulder and knocked me down, and as it fell it hit me on this leg and broke it; Utterbach didn't say anything to any of the boys who were along there, that I heard; I was within two feet of the car, I suppose, when we threw the rail up; we stood there so as to raise the rail up and throw it on top of those rails

694    APPELLATE COURT OF INDIANA,

The Louisville, New Albany and Chicago Railway Company v. Isom.

on the car. No one said anything about letting the rail alone or moving it back after it was out of our reach; after the rail was out of our reach the man on the car managed them.

"When we threw the rail Utterbach said 'heave her up!' He would say 'ho! he!' and then we raised the rail up, and then he said 'throw it.' It was not over two minutes after we threw the rail up before it fell back. Mr. Utterbach caused the rail to fall by taking hold of it and not being able to hold it; he didn't give any warning."

One other witness was introduced by appellee. There is nothing in the cross-examination of appellee or in the testimony of the other witness to strengthen appellee's case, unless it is the fact that Utterbach was the foreman who employed and discharged section men, and that there was no director or other officer of the road there when the accident occurred. No evidence was introduced by appellant.

It appears that on this occasion Utterbach and appellee were engaged in the same common pursuit, in accomplishing the same common object, and that they were, therefore, fellow-servants. The questions of rank and of power of Utterbach to employ and discharge servants, and the fact that there was no other agent or officer of the company present, are not controlling, in considering the relation of Utterbach to the appellee. The controlling consideration is whether the negligent act of Utterbach grew out of the performance of some duty owing by the appellant to appellee, or whether the duty violated was one, not of the master, but of one servant to another engaged in one common employment. In this case, the service of Utterbach which caused the accident did not involve the performance of some duty by

the master to the servants in relation to the supplying of proper machinery or safe places to work, but the most that can be claimed under the most favorable construction of the evidence in behalf of appellee, is that Utterbach was the foreman of appellant as to the labors of appellee on this occasion. In loading the T rails and old iron on to the car, the appellee and Utterbach were discharging a duty owing from both to the master, and they were necessarily fellow-servants. In other words, the act of Utterbach which caused the injury, if negligent, was the negligence of a fellow-servant. *New Pittsburgh Coal and Coke Co.* v. *Peterson,* 136 Ind. 398; *Cole Bros.* v. *Wood,* 36 N. E. Rep. 1074; *Salem Stone and Lime Co.* v. *Chastain,* 9 Ind. App. 453; *Day* v. *Cleveland, etc., R. W. Co.,* 137 Ind. 206.

In *Cole Bros.* v. *Wood, supra,* Judge LOTZ, speaking for this court, said: "The same individual may combine in his own person the functions of both master and servant. When such person performs a servant's duty, no matter what his rank or title may be, whether superintendent, manager, agent, foreman or boss, he is, in the performance of such duty, deemed only a fellow-servant with others employed in the same common business." *Taylor* v. *Evansville, etc., R. R. Co.,* 121 Ind. 124; *Nall, Admx.,* v. *Louisville, etc., R. W. Co.,* 129 Ind. 261.

It is not easy, in all respects, to reconcile the decisions in *Taylor* v. *Evansville, etc., R. R. Co., supra; Nall, Admx.,* v. *Louisville, etc., R. W. Co., supra,* and *Cole Bros.* v. *Wood, supra,* with the case of *New Pittsburgh Coal and Coke Co.* v. *Peterson, supra,* but the facts of each case are different.

It is difficult to formulate a general rule that will govern all cases of a given class. The principles of the law

in such cases are well settled, but the difficulty lies in their application to the facts and circumstances in each particular case.

Judgment reversed ,with instructions to sustain appellant's motion for a new trial.

Filed October 16, 1894.