PEIRCE, RECEIVER, *v.* OLIVER.

[No. 2,165.    Filed June 10, 1897.]

INTERROGATORIES TO JURY.—*Conclusions.*—Answers to interrogatories which call for a conclusion of the jury cannot be considered in determining the sufficiency of a verdict.    *p. 91.*

COMPLAINT.—*Necessary Averments.*—*Contributory Negligence.*—*Damages.*—A complaint in an action for injuries arising from negligence must aver specifically that the plaintiff was free from contributory negligence, or must state facts showing that his own negligence did not proximately contribute to the injury.    *p. 91.*

SAME.—*Personal Injuries.*—*Specific Facts Pleaded Control General Averments.*—A general averment that an injury was inflicted without any fault or negligence on the part of the person injured is controlled by a statement of specific facts and circumstances upon which such general averment is based.    *p. 91.*

MASTER AND SERVANT.—*Fellow Servant.*—The test whether in a given case an employe is to be regarded a vice principal or a fellow servant, is not his title, or rank, or power to employ or discharge, but the nature of the services which he performs. An employe authorized to perform duties which are clearly the master's duties is, to that extent, a vice principal.    *pp. 96, 97.*

SAME.—*Fellow Servant.*—*Negligence.*—In an action against a railroad company by an employe for an injury received while assisting in constructing a bridge, caused by a jackscrew falling from the timbers above and striking plaintiff, an averment in the complaint that such jackscrew fell and injured plaintiff by reason of the negligence of the foreman in failing to watch it, and prevent it from falling is but a charge of negligence of a fellow servant for which no recovery can be had against the company.    *pp. 98–103.*

From the Montgomery Circuit Court.    *Reversed.*

*C. A. Schmettau, Clarence Brown* and *Bayless, Guenther & Clark,* for appellant.

*Benjamin Crane* and *A. B. Anderson,* for appellee.

ROBINSON, J.—Appellee brought this action to recover damages for a personal injury. The complaint

is in one paragraph, and avers substantially that the predecessor of the appellant, receiver, employed one Earnst to have the care, repair, and inspection of bridges along the line of appellant railroad, and that he was authorized as bridge foreman to employ such bridge carpenters, helpers, and day laborers as might in his opinion be necessary to keep the bridges on the line of said road in repair; that said Earnst had the power and authority to employ, determine the compensation of, and to discharge such bridge carpenters and laborers; that on the 5th day of July, 1893, the appellee was employed by the appellant, through said bridge foreman Earnst, to assist as a member of the bridge gang in the repair of bridges on said road; that the appellee had never, prior to his said employment, worked in a bridge gang or in the repair or construction of bridges, and had no experience in such work, as the appellant and the said Earnst at the time well knew; that he was 22 years of age, and had had no experience in carpenter work or bridge building; that on the 20th day of July, 1893, appellee was engaged under the supervision and control of said Earnst, as such bridge foreman, in working on a certain bridge of appellant, being engaged in assisting in putting up sway braces upon piles for said bridge; that the center pile was out of line, and to force it into line with the other piles, the said Earnst and this appellee and one Farout put a jackscrew between the said center pile and one of the old parts of said bridge, and tightened the same so as to force said pile into line, and that said Earnst directed and ordered the appellee to go below where said screw was, and nail the sway brace to said piles, and that appellee thereupon asked the said Earnst if said jackscrew was all right and safe, and said Earnst replied that it was all right, and that he, said Earnst, would watch it and prevent it from fall-

ing upon appellee; that appellee, in obedience to the
direction of said Earnst, then went below where said
screw was at a point about six feet below said screw,
and while preparing to nail said sway braces, placed
his right hand upon a cross piece on the old work at a
point about six feet below and immediately under said
jackscrew, and that thereupon, without any fault or
negligence on the part of appellee, the jackscrew fell
upon appellee's right hand and severely and perma-
nently injured the same.   It is further averred that
the said Earnst did not watch and guard said jack-
screw as he promised and assured appellee he would,
to keep the same from falling and slipping fom its
place, and upon the appellee, but negligently and care-
lessly suffered and allowed the same to fall upon
appellee's hand, whereby he sustained the injuries
aforesaid.

The errors assigned are the overruling of the demur-
rer to the complaint, overruling appellant's motion for
judgment on the verdict, sustaining appellee's motion
for judgment, and overruling appellant's motion for a
new trial.

The principal questions to be determined upon this
appeal are whether appellee was guilty of negligence
proximately contributing to his injury, and whether
Earnst and the appellee were fellow servants.

Upon the questions of contributory negligence and
whether appellee and Earnst were fellow servants, the
special verdict shows that J. E. Johnson was master
of the bridges and buildings, and that Earnst was
employed as bridge foreman to have charge of the con-
struction of the bridge where the injury occurred; that
on the 5th day of July, 1893, appellee, who was twen-
ty-two years old, and inexperienced in carpenter work
or bridge building, which appellant knew, was
employed by Earnst to assist in building this bridge;

that Earnst was authorized to employ, fix the compensation of and discharge men; that on the 20th day of July, 1893, the appellee, assisted by Earnst and another workman placed a jackscrew, weighing from sixty-five to seventy pounds, between the center pile of said bridge and a timber of the old bridge, and tightened the screw so as to force the pile into line; that prior to the setting of the screw by appellee and Earnst, appellee and one Farout had placed the screw between a pile of said bridge and a timber of the old bridge, and tightened the same to force the pile into line. The jury answered in one interrogatory that appellee and Farout placed the screw in position at the orders of Earnst, and in another that Earnst and appellee placed it in position; that the screw, when in place, was eighteen or twenty feet from the ground; that in order to fasten sway braces to said piles it was necessary for some one to go below the screw about ten feet; that Earnst directed appellee, after the last setting of the screw, to go below, and in answer to a question by appellee whether the screw was safe, Earnst answered, "Yes, it is all right; I will watch it;" that appellee, relying upon this statement of Earnst, went below to a point six feet below the screw, and placed his right hand upon a cross piece on the old bridge at a point about six feet below and under the screw; that the screw, by reason of being improperly and insecurely set between said old work and said pile, fell out and upon appellee's right hand while it was resting upon the said cross piece; that Earnst did not watch and guard said screw; that appellee could have gone below to nail on the sway braces by another and different route than the one he took.

The thirty-fifth, thirty-eighth and thirty-ninth interrogatories and answers were as follows:

"Thirty-fifth.    Did the jackscrew, without any fault or negligence on the part of the plaintiff, kick out and

fall upon the plaintiff's right hand, crushing and mashing the same, breaking the knuckles of the second finger, breaking the bone back of the knuckle of the third finger, and otherwise bruising and lacerating the hand? Ans. Yes.

"Thirty-eighth. Did the jackscrew fall upon plaintiff's right hand and injure it by reason of the negligence and carelessness of said Ben. Earnst? Ans. Yes.

"Thirty-ninth. Was the plaintiff, at the time he received said injuries, in the exercise of due care and diligence, and free from fault and negligence? Ans. Yes."

In answer to other interrogatories, the jury found the extent of appellee's injuries. In so far as each of the above interrogatories call for a conclusion of the jury they cannot be considered in determining the sufficiency of the verdict. *Board, etc.,* v. *Bonebrake,* 146 *Ind.* 311; *New York, etc., R. W. Co.* v. *Grossman,* 17 Ind. App. 652.

The complaint contains the general averment that the injury occurred without appellee's fault, and it also contains specific allegations as to the circumstances under which appellee was injured.

It is well settled in this State that a complaint which seeks to recover for injuries arising from negligence must aver specifically that the plaintiff was free from contributory negligence, or must state facts showing that his own negligence did not proximately contribute to the injury. It is also settled, that a general averment that an injury was inflicted without any fault or negligence on the part of the injured party is controlled by a statement of the specific facts and circumstances upon which the general averment is based. *Ivens* v. *Cincinnati, etc., R. W. Co.,* 103 Ind. 27; *City of Evansville* v. *Worthington,* 97 Ind. 282; see *Indianapolis, etc., R. W. Co.* v. *Johnson,* 102 Ind. 352;

*Stuart* v. *New Albany Mfg. Co.*, 15 Ind. App. 184; *Myers* v. *W. C. DePauw Co.*, 138 Ind. 590; *Evansville, etc., R. R. Co.* v. *Duel*, 134 Ind. 156; *Rietman* v. *Stolte*, 120 Ind. 314; *Brazil Block Coal Co.* v. *Hoodlet*, 129 Ind. 327.

The complaint does not proceed upon the theory that the employer of appellee negligently supplied unsafe machinery; but the facts pleaded clearly state, and the verdict shows that the injury of which appellee complains was caused by the manner in which the jackscrew was being used. It is not claimed that the injury resulted from an unsafe or defective jackscrew, but the cause of the injury was the improper use of a safe appliance.

It appears from the allegations of the complaint, and from the verdict that appellee assisted in putting the jackscrew in the place from which it fell and that he had some doubts about its safety. It must have fallen by reason of the manner in which it was put up, for there is no allegation that any appliance used was defective. In connection with this is the fact that when he did go below he took a position immediately beneath the jackscrew. It is not shown that this position was the only one he could occupy while doing the work. It required no special knowledge or skill for him to ascertain for himself whether or not the screw was in a safe condition before he went below. He had assisted in placing the screw in place, and believed it was not safe, he had ample opportunity to see for himself, and if, under these circumstances, instead of investigating for himself he chose to rely wholly on the opinion of another, he did so at his own risk. Had prudence and care been observed by the appellee, believing as he did that the appliance was not safe, he would not have taken a position that would expose him to the danger of the screw falling on him. This is

not a case where the servant had been furnished with defective or unsafe appliances with which to work, nor is it a case where the danger was known to the master and unknown to the servant, but it is a case where the appliances and working place were suitable and safe with the exercise of ordinary care on the part of the servant, he having the same opportunity to know of the danger that the employer had.

Thus, in *Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 326, it is said: "Where the danger is alike open to the observation of all, both the master and servant are upon an equality, and the master is not liable for an injury resulting from the dangers of the business." *Hoosier Stone Co.* v. *McCain*, 133 Ind. 231.

Where an employe is injured by the caving in of a ditch which he was assisting to construct through a soil composed largely of sand and gravel, it was held that the liability of the trench to cave in by reason of the peculiarity of the soil, and the danger attending the work, were open alike to the observation of all the parties, and that there could be no recovery. *Vincennes, etc., Co.* v. *White*, 124 Ind. 376. See *O'Neal* v. *Chicago, etc., R. W. Co.*, 132 Ind. 110.

In *Day* v. *Cleveland, etc., R. W. Co.*, 137 Ind. 206, the court said: "In a case where the servant is one of mature age and experience, as in this case, the law never imposes the duty on the master of becoming eyes and ears for his servant, where there is nothing to prevent the servant from using his own eyes and ears to avoid danger. * * * The law requires that men shall use the senses with which nature has endowed them, and when without excuse one fails to do so, he alone must suffer the consequences, and he is not excused where he fails to discover the danger if he made no attempt to employ the faculties nature has given him." See *Salem-Bedford Stone Co.* v. *Hobbs*, 11 Ind. App.

27; *Pittsburgh, etc., R. W. Co.* v. *Woodward*, 9 Ind. App. 169; *Gleason* v. *New York, etc., R. R. Co.*, 159 Mass. 68, 34 N. E. 79; *Big Creek Stone Co.* v. *Wolf*, 138 Ind. 496; *Evansville, etc., R. R. Co.* v. *Duel*, *supra; Lynch* v. *Chicago, etc., R. W. Co.*, 8 Ind. App. 516.

The complaint does not show, nor does the verdict, that the appellee was taken from the work for which he was employed, and assigned more hazardous work. He was injured in doing the work he was employed to do. It does appear that he was, not an experienced bridge builder, and that he had worked as a bridge carpenter less than three weeks, but in the absence of a showing to the contrary he was in possession of his proper faculties, and was of average intelligence. He admits he knew there was some possibility of danger from the falling of the screw. It required no experience or special skill to see and fully comprehend all his surroundings. He knew the manner in which the screw had been set, and whether the timbers against which it rested were such that it was liable to slip and fall. It cannot be said that the risk was created by the negligent act of the employer or its representative in making unsafe the work which appellee was specially ordered to do. The knowledge of the danger which appellee had, added that danger as one of the incidents of the employment which the appellee assumed. *Stuart* v. *New Albany Mfg. Co., supra; Muncie Pulp Co.* v. *Jones*, 11 Ind. App. 110; *Louisville, etc., R. W. Co.* v. *Corps*, 124 Ind. 427.

In Cooley on Torts, at page 555, the author says: "It has been often—and very justly—remarked that a man may decline any exceptionally dangerous employment, but if he voluntarily engages in it he should not complain because it is dangerous. Nevertheless, where one has entered upon the employment

and assumed the incidental risks, it is not reasonable to hold that other risks which he is directed by the master to assume, are to be left to rest upon his shoulders, merely because he did not take upon himself the responsibility of throwing up the employment instead of obeying the order." 2 Thomp. Neg. 975.

Appellee's counsel say in their brief that "the facts averred in the complaint of themselves clearly show that appellee was free from fault and negligence, and that the injuries complained of were the direct result of the negligence of Earnst in failing to guard the appellee, and in suffering the jackscrew to fall upon appellee." They further say that the complaint in this case was drawn in the light of the decisions in *Taylor* v. *Evansville, etc., R. R. Co.,* 121 Ind. 124, and *Louisville, etc., R. W. Co.* v. *Hanning,* 131 Ind. 528, and that their position in this case is, that it is the duty of the master to make safe the working place and the materials with which his work is done, and that he can not escape responsibility by delegating that duty to an agent.

The only machinery or tool or working appliance mentioned in the complaint is the jackscrew, and there is no averment that it was in any manner defective. And if the place in which appellee was working when injured was made unsafe by any act of Earnst or by his omission to act, it is necessary that Earnst should have been a vice principal, and not a fellow servant of appellee. The special verdict shows that Earnst worked under a Mr. Johnson, who was the superintendent of bridges and buildings, and that Earnst's authority extended merely to the particular bridge which the men with whom appellee worked were engaged in repairing.

It is not necessary to cite authorities in support of the rule in this State, that, in the absence of any stat-

ute, a railroad corporation is not liable to an employe for an injury occasioned by the negligence of a co-employe.

As to who are and who are not fellow servants there is a wide diversity of opinion. An examination of the decisions of the courts of different states on the question leads to hopeless confusion. Nor would it be in any great degree helpful to set out abstracts of the opinions of our own courts on the subject.

In the following cases the question was considered, and was determined upon the particular circumstances of each case. *Gillenwater* v. *Madison, etc., R. R. Co.,* 5 Ind. 339; *Wilson* v. *Madison, etc., R. R. Co.,* 18 Ind. 226; *Fitzpatrick* v. *New Albany, etc., R. R. Co.,* 7 Ind. 436; *Ohio, etc., R. R. Co.* v. *Tindall,* 13 Ind. 366; *Slattery's Admr.* v. *Toledo, etc., R. W. Co.,* 23 Ind. 81; *Chicago, etc., R. W. Co.* v. *Harney,* 28 Ind. 28; *Columbus, etc., R. W. Co.* v. *Arnold, Admr.,* 31 Ind. 174; *Robertson* v. *Terre Haute, etc., R. R. Co.,* 78 Ind. 77; *Louisville, etc., R. W. Co.* v. *Isom,* 10 Ind. App. 691; *Louisville, etc., R. W. Co.* v. *Southwick,* 16 Ind. App. 486; *Indiana Car Co.* v. *Parker,* 100 Ind. 181.

"It is generally held that all servants in the employ of the same master, subject to the same general control, paid from a common fund, and engaged in promoting or accomplishing the same common object, are to be held fellow servants in a common employment." Beach, Contrib. Neg. (2d ed.), section 332.

"All who serve the same master, work under the same control, derive authority and compensation from the same common source, and are engaged in the same general business, though it may be in different grades or departments of it, are fellow servants, who take the risk of each other's negligence." Thompson Negligence, 1026.

"Persons are fellow servants where they are en-

Peirce, Receiver, *v.* Oliver.

gaged in the same common pursuit under the same general control." Cooley Torts, (note) 544.

"The term 'vice principal' is generally used to denote an employe to whom the employer has entrusted the performance of a duty which the law requires the employer himself to perform. We think that a superior agent or vice principal is an employe who is entrusted generally with the performance of the master's duties, or is entrusted with the performance of some of the master's duties, although he may not be entrusted with all the duties of the employer." 3 Elliott Railroads, sec. 1317.

Whatever standard might be adopted with which to make comparison, it is evident that all these rules are not free from fault. It has often been said that it is impossible to harmonize the decisions of the various states as to who are fellow servants. It is equally impossible to harmonize what these eminent writers have laid down as rules. That court is fortunate that is able to harmonize the decisions of its own state on this subject.

Without undertaking to formulate a definition from the decisions or from text writers, it is now well settled that the decisive test whether in any given case an employe is to be regarded as a vice principal or a fellow servant, is not his title or rank or power to employ or discharge, but the nature of the services which he performs. An employe authorized to perform duties which are clearly the master's duties is, to that extent, a vice principal. As stated in *Robertson* v. *Chicago, etc., R. W. Co.*, 146 Ind. 486: "The controlling inquiry must be as to whether the act or omission resulting in injury involved a duty owing by the master to the injured servant." *New Pittsburgh Coal Co.*, v. *Peterson*, 136 Ind. 398; *Spencer* v. *Ohio, etc.*,

*R. W. Co.*, 130 Ind. 181; *Justice* v. *Pennsylvania Co.*, 130 Ind. 321.

The only negligence alleged against the foreman is that he failed to watch the jackscrew, and negligently and carelessly permitted it to fall.  If he had done this can it be said that he was performing any duty of his principal?  In the performance of that act  would he not have been in the strictest sense a fellow servant, and not a vice principal?  It is not alleged that the jackscrew was worn out or defective, nor that the timbers with which they were working were defective, nor that there had been a failure to provide a safe place in which to work, nor that the principal kept in its employ an incompetent servant whose incompetency caused the injury.

In *Justice* v. *Pennsylvania Co.*, *supra*, it is said: "That a section foreman may be a vice principal is not doubted.  In this case he was a vice principal in the matter of hiring and discharging hands, for the master owes it as a duty to exercise reasonable care not to employ any but careful men, and to discharge those who prove to be negligent.  In the hiring and discharging of the men he was in the performance, therefore, of a duty which the master owed to his servants and was, while so engaged, a vice principal.  But it was not so in transporting the men to and from their work.  In the matter of moving the hand car and their tools to and from the locality at which they worked upon the track, they were in the discharge of a duty which they owe the master and were, therefore, fellow servants." *Capper* v. *Louisville, etc., R. R. Co.*, 103 Ind. 305.

Counsel for appellee rely upon the case of *Taylor* v. *Evansville, etc., R. R. Co.*, 121 Ind. 124, and set out an extended extract from the opinion.  In that case it is held that a master mechanic who had entire control

of the railroad company's shop, and of all the employes therein, and of all work, and had full authority to employ and discharge the machinists and workmen, and to select and change machinery, was not a co-employe with a machinist, who, under the direction of the master mechanic, was removing the head of the equalizer of one of the company's locomotives, and who was injured by the master mechanic negligently pulling the equalizer out of its place, whereupon it fell upon and injured the employe. In the opinion it is said: "If Torrence [the master mechanic] was acting in the capacity of a co-employe at the time his negligence caused the appellant's injury, the action can not be maintained, although he was the appellant's superior, and had the right to retain or discharge him. An agent of high rank may be, at the time an act is done, a fellow servant of an employe occupying a subordinate position. * * * If, for instance, the general superintendent should take hold of one end of an iron rail to assist an employe of the company in loading it on the car he would be, as to that single act, a fellow employe, although as to other acts he might be the representative of the master." Again, the opinion says: "If it appeared that the master mechanic worked with the machinists in the shop, as a foreman or a like agent ordinarily does, we should have a different case. * * * If the master mechanic had been no more than a co-employe working with the appellant, or if the appellant had entered the service knowing that the master mechanic was to work with him, then he would be held to have assumed the risk arising from the master mechanic's negligence while working or acting merely in the capacity of a fellow-servant."

While the facts upon which the above case is based readily distinguish it from the case at bar, yet the

opinion itself sustains the position we take upon the facts in this case. Even if it were held that Earnst, in the case at bar, occupied the same position that Torrence occupied in the case cited, the cases are distinguishable in that in the case cited the injury resulted from an affirmative act of the master mechanic, while in the case at bar it is not claimed that Earnst caused the screw to fall, and it does appear that appellee assisted in placing it in position.

The case of *Louisville, etc., R. W. Co.* v. *Hanning, Admr.*, 131 Ind. 528, is clearly distinguishable from the case at bar. In that case a service was required of the employe outside of the line of his employment, and at a place other than that provided for the performance of his regular and ordinary duties. The court said in that case: "The averments of the complaint show that he was required to perform this service, in the particular place indicated, by the direction of his superior, to whose orders he was subject. Its performance would subject him to great danger, unless certain precautions were observed in the placing of signal flags. These dangers grew out of the place in which he was required to work, and were, it is averred, unknown to his regular employment."

In *Indiana, etc., R. W. Co.* v. *Snyder*, 140 Ind. 647, cited by counsel, suit was brought for damages for an injury caused by the breaking of a car handle. It was held in that case that a carpenter in the shops of a railroad company, who was required by the company to make hand-car handles and put them in place, is as to such service a vice principal, and not a fellow servant, and knowledge on his part that a handle which he makes and places is defective, charges the master with notice, and renders the master liable. But in that case it does not appear that the carpenter and employe were working together or that the employe was sub-

ject to the orders of the carpenter, and the decision is based upon the fact that the master, although done by a carpenter, supplied a defective appliance of which the employe was ignorant. In the case at bar the appliance was not defective, but was negligently used, and the danger thus created was open to the observation of the employe.

In *Pennsylvania Co.* v. *O'Shaughnessy, Admr.*, 122 Ind. 588, cited by appellee's counsel, it is held that an employe who does what he is ordered to do is not in fault, but is protected to a reasonable extent by the order while engaged in performing the special duty enjoined upon him; but it is also held that when engaged in the line of his duty, whether acting under orders or not, he must use ordinary care to avoid injury, and that where a brakeman is ordered to go to a switch, and two ways are open to him, one entirely safe, and the other very perilous, and he leaves the safe way after having gone upon it, and voluntarily takes the dangerous one, knowing the danger to which he exposes himself, and using no precaution to avert it, and is injured by a moving train, he cannot recover.

In *Cole Bros.* v. *Wood*, 11 Ind. App. 47, it is said: "The same individual may combine in his own person the functions of both master and servant. When such person performs a servant's duty, no matter what his rank or title may be, whether superintendent, manager, agent, foreman, or boss, he is, in the performance of such duty, deemed only a fellow servant, with others engaged in the same common business." See *Louisville, etc., R. W. Co.* v. *Isom*, 10 Ind. App. 691; 1 Sherman & Redfield Neg., 403; *Salem Stone Co.* v. *Chastain*, 9 Ind. App. 453; *Riley* v. *O'Brien* 53 Hun. 147; *Indianapolis, etc., R. W. Co.* v. *Johnson*, 102 Ind. 352; *New Pittsburgh, etc., Co.* v. *Peterson*, 136. Ind. 398.

In the case of *Riley* v. *O'Brien, supra,* one Jones was a superintendent of a part of the work of constructing an aqueduct. Jones told an employe to get out some bricks from a pile to load a car. The employe called Jones' attention to the shaky condition of the pile of bricks, and was told it was "all right, I will attend to that." The employe continued the work, the pile of bricks cracked, and the covering of boards on the pile slid off and broke the employe's leg. There was no proof that the superintendent was incompetent, nor that the bricks were either badly piled or unskillfully covered, and it was held that the case showed only the neglect of a fellow workman, and there could be no recovery.

In the appellee's testimony he says that he realized it was dangerous to set the screw, and get below it; that he knew the labor he would be required to do would be attended with some danger; that it occurred to him that the screw might slip out, and that he thought there might be some danger attending his going below; that he thought it might be dangerous, so much so that he asked if it was safe; that he did not ask Earnst to hold the screw, but asked if it was safe; that he saw the screw as plainly as Earnst did, and that he saw that if it slipped out it would probably fall on him. The witness Farout testified that he was working with appellee and Earnst, and that the manner in which the screw was set made it dangerous to go below it. It appears from the evidence that appellee and Farout held the ends of the screw while Earnst tightened it.

Appellee's means of observation were equally as good as Earnst's or Farout's, and he was doubtful of the safety of the screw. Taking all the facts and circumstances together, we think that any finding of the jury that appellee was ignorant of the danger to which

he was exposed at the time he was injured, is not supported by the evidence. There is no conflict in the evidence that appellee knew as much about the danger of his position as any one could know. The verdict as to the care exercised by appellee is insufficient to enable us to say that he was exercising proper care when he had all the knowledge any one had, or could have, as to the condition of the screw and the manner in which it had been placed in position.

Believing that this record shows that appellee and Earnst were fellow servants, and that appellee was not free from fault proximately contributing to his injury, it follows that the court erred in overruling appellant's motion for judgment.

Judgment reversed, with instructions to sustain appellant's motion for judgment on the special verdict.