---

AMERICAN TELEPHONE AND TELEGRAPH COMPANY v. BOWER.

[No. 2,376. Filed Jan. 27, 1898. Rehearing denied April 21, 1898.]

MASTER AND SERVANT.—*Fellow Servant.*—*Vice Principal.*—Defendant's agent and foreman engaged in repairing and changing the poles of a telegraph line caused trenches to be dug along the sides of a number of poles for the purpose of moving them, and without any notice or warning to plaintiff, climbed one of the poles and loosed the wire connecting other poles therewith, one of which fell and struck plaintiff, who was engaged in digging a trench at the side thereof. *Held,* that the foreman was in the performance of a duty which he owed to the master, and was a fellow servant with all the others engaged in the common business, and that plaintiff could not recover of defendant for the injury thereby received.

From the Knox Circuit Court. *Reversed.*

*Cullop & Kessinger, J. T. Hays* and *J. H. Drake,* for appellant.

*Walter S. Maple* and *Briggs & Lindley,* for appellee.

HENLEY, J.—This was an action for damages brought by appellee against appellant, resulting in a verdict and judgment for appellee. There were three paragraphs of the complaint, neither of which is assailed in this court. There was a trial by jury and a special verdict returned, consisting of 246 interrogatories and answers. Each party moved for judgment upon the verdict. The motion of appellee was sustained, and that of appellant overruled.

Appellant's assignment of errors brings before this court for review, the action of the lower court in sustaining appellee's motion for judgment, and in overruling appellant's motion for judgment upon the special verdict. Under the facts as found by the jury, who was entitled to judgment? That is the only question presented for our decision. The complaint being a background upon which the facts found must be viewed, it is important that the pertinent allegations be set out, at least those which are necessarily involved in this decision. It is alleged in appellee's complaint that appellant is a corporation, and was on the 14th day of December, 1895, engaged in erecting and repairing a part of its telephone and telegraph line, which passes through the county of Sullivan; that appellant at that time, and for a long time prior thereto, had been and was represented by one Edgar Torry, who was, on said day, and had been for a long time, appellant's agent, representative, and vice principal, and that said Torry, as said appellant's agent, representative, and vice principal, was by appellant, on said day, authorized to employ and discharge workmen, pay them when discharged, direct employes where to work, what tools to work with, and to control their actions in and about said employment; that Torry as such agent, etc., employed appellee to assist in the work of moving, repairing, and constructing said line through said county; that a part of the work consisted in moving the poles (which had theretofore been erected and the wires strung upon them), some six to fourteen feet further east, on account of the location of a gravel road; that in order to move said poles said Torry directed appellee to dig a trench six feet deep, down to the bottom of the poles, and of sufficient length to allow the pole to be slipped

to the east to its proper position; that appellee proceeded to dig the ditch, and had the same dug to a depth of four feet, nine feet in length, and two feet wide; that the poles forming the line were numbered from north to south, from number 1338 to 1345, and were set about one hundred feet apart, and while appellee was engaged in digging the trench as aforesaid, "the defendant by its said agent and vice principal, with full knowledge of the facts herein stated, carelessly and negligently climbed to the top of said pole number 1338, after the dirt had been dug away from the east side thereof to the depth of six feet and the length of six feet east, without any ropes, stays, or props attached thereto to prevent its falling, except the telephone wires connecting said poles." That the pole which Torry climbed had just been moved to the east end of the trench dug for the purpose, and that said Torry without any notice or warning to appellee, carelessly and negligently loosened a part of the wires, and carelessly and negligently caused said pole number 1338 to fall or lean to the east; that trenches had been dug by Torry's order six feet deep, and from six to nine feet in length, and two feet wide directly east from the east side of the poles numbered 1339, 1340, 1341, 1342, 1343, and 1344, and were so dug at the time said Torry ascended pole number 1338; that the falling of the pole number 1338 which was attached to the top of the other poles by the wires, caused the other poles where the trenches had been dug to fall in rapid succession, thereby causing pole number 1345, where appellee was working, to fall to the east and over and upon and against appellee, whereby appellee sustained great damage. The complaint further alleges that the appellee was without fault, "and no danger would have arisen, or injury to the plaintiff occurred,

but for the carelessness and negligent conduct of the defendant's said agent and vice principal, as hereinbefore stated."

It is the purpose of each paragraph of the complaint to hold appellant liable for the negligent act of the man Torry, who in each paragraph of the complaint is denominated the agent, representative, and vice principal of appellant. Was Torry such agent and vice principal, or was he a fellow servant with appellee? A solution of this problem will determine the rights of the parties to this action.

The verdict shows that Torry had authority to direct the men where to work, when to work, and with what tools to work; that he had charge of the work being done; that he employed and paid appellee; that Torry assisted in moving the poles, by helping to dig and fill up the trenches and loosen the wires. Question 225 and answer is as follows: "Q. At the time of plaintiff's injury was Edward Torry on one of the poles that fell, engaged in loosening the wire, as a part of the work in moving the said poles? Ans. Yes."

This act of Torry is the very act of which appellee complains, and which must have caused the injury under the facts as found by the jury. There was no one present directing the work of moving the poles but Torry; the work of moving the poles was first passed upon by appellant's district superintendent, one Calhoun, planned by the superintendent and wire chief, and then turned over to a lineman to be executed. Torry was a lineman in appellant's employ, and it was the duty of lineman, amongst other duties, to move poles when required. We think the rule is well stated that, if at the time the servant performs the act, the result of the performance of which another servant is injured, the offending party is in the performance of a duty which the master owes to his servant,

then the offending party is not a fellow servant, but a vice principal. But if the offending party in performing the act which caused the injury was engaged in the performance of a duty which he owed to the master then he is a fellow servant with all others engaged in the common business. Or to state the rule as recently expressed by the Supreme Court of this State in the case of *Robertson* v. *Chicago, etc., R. W. Co.*, 146 Ind. 486: "The rule in this State, now firmly settled, is, that a difference in rank or the power to control and direct or to discharge from service is not the test as to whether one is a fellow servant or vice principal. The controlling inquiry must be as to whether the act or omission resulting in injury involved a duty owing by the master to the injured servant."

And this court in the recently decided case of *Peirce, Rec.,* v. *Oliver,* 18 Ind. App. 87, said: "It is now well settled that the decisive test whether in any given case an employe is to be regarded as a vice principal or a fellow servant, is not his title or rank or power to employ or discharge, but the nature of the services he performs."

The following cases, amongst others, in this State sustain the doctrine as above stated: *New Pittsburgh, etc., Coke Co.* v. *Peterson,* 136 Ind. 398; *Spencer* v. *Ohio, etc., R. W. Co.,* 130 Ind. 181; *Justice* v. *Pennsylvania Co.,* 130 Ind. 321; *Cincinnati, etc., R. R. Co.* v. *McMullen,* 117 Ind. 439; *Indiana, etc., R. W. Co.* v. *Dailey,* 110 Ind. 75; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Salem Stone and Lime Co.* v. *Chastain,* 9 Ind. App. 453.

Now it is clearly found by the jury in this case that Torry was, when he climbed the pole and loosened the wire, engaged in the performance of a part of the work required to be done to move the poles—the

common work in which appellee and Torry were both engaged—it was not the performance of a duty which appellant owed to appellee, but the performance of a duty which Torry owed to the appellant, the master.

Under the facts found by the jury Torry occupied the same relation to appellee and the other men employed in the work of removing the poles and repairing and constructing the line, that a foreman or section boss occupies who has under him a gang of men engaged in repairing a railroad.

In the case of *Northern Pacific R. R. Co.* v. *Peterson*, 162 U. S. 346, the Supreme Court of the United States says in substance: The boss of a small gang in making repairs upon a railroad, over a distance of three sections, aiding the regular gang upon each section as occasion demands, is a fellow servant or a member of the gang, and not a superintendent of a separate department, or in control of such a distinct branch of the work as will render the master liable for his neglect to such co-employes, even if the boss does not actually handle a shovel or a pick. As has been before stated, it was found by the jury that appellant's district superintendent first passed upon the work of moving the poles; that the work was planned by appellant's district wire chief, and then given to the man Torry, a lineman, to carry out.

In the case of *O'Brien* v. *American Dredging Co.*, 53 N. J. L. 291, 21 Atl. 324, it was said: "Whether the master retain the superintendence and management of his business, or withdraws himself from it and devolves it on a vice principal or representative, it is quite apparent that, although the master or his representative may devise the plans, engage the workmen, provide the machinery and tools and direct the performance of work, neither can, as a general rule, be continually present at the execution of all such

work.   It is the necessary consequence that the mere execution of the planned work must be entrusted to workmen, and, where necessary, to groups or gangs of workmen, and in such case that one should be selected as the leader, boss, or foreman, to see to the execution of such work.   This sort of superiority of service is so essential and so universal that every workman, in entering upon a contract of service, must contemplate its being made use of in a proper case.   He therefore makes his contract of service in contemplation of the risk of injury from the negligence of a boss or foreman, as well as from the negligence of another fellow workman.   The foreman or superior servant stands to him, in that respect, in the precise position of his other fellow servants."   The Supreme Court of the United States in a very recent decision, *Central R. R. Co.* v. *Keegan,* 160 U. S. 259, held that the New Jersey case above quoted from stated the rule of law correctly.

We think the facts found by the jury in this case, brings it squarely within the rule announced in the Indiana cases cited, and also within the rule as adopted by the Supreme Court of the United States, and that appellee and the man Torry were fellow servants. All of the paragraphs of the complaint proceed upon the theory that Torry was the agent and vice principal of appellant, and that it was his, said Torry's act which caused appellee's injury, any other reason why appellee may have been injured is by the pleader in each paragraph of the complaint expressly disowned.   In each paragraph of the complaint it is distinctly alleged that, "there was no danger in doing said digging, and no danger would have arisen, or injury to the plaintiff occurred, but for the carelessness and negligent conduct of the defendant's said agent

and vice principal, as hereinbefore stated." The negligence "hereinbefore stated" being the climbing by said Torry of one of the poles and the loosening of one of the wires, which work the jury found was a part of the work of moving the poles. It is not alleged that the tools or timbers were in any part defective, nor that the master failed to provide a safe working place for appellee, nor that the master kept in his employ unskilful and incompetent workingmen which unskilfulness and incompetency was known to the master and unknown to appellee, and that having notice of such incompetency, the master had failed to discharge such servant, but the whole action is founded upon the theory that the said Torry was the agent and vice principal of appellant. This, the verdict wholly fails to establish.

The lower court erred in sustaining appellee's motion for judgment upon the special verdict and in overruling appellant's motion for judgment upon the special verdict.

For the reasons stated the cause is reversed, with instructions to the lower court to sustain the motion of appellant for judgment upon the special verdict.