PERIGO v. THE INDIANAPOLIS BREWING COMPANY.

[No. 2,643.   Filed January 3, 1899.]

NEGLIGENCE.—*Personal Injury.—Fellow Servant.—Contributory Negligence.*—Plaintiff was injured by the falling of a scaffold which he helped to build.   The scaffold became unsafe through alterations made by two competent workmen and fellow servants, under the direction of a foreman.   The manner of making the alterations of the scaffold was wholly within the discretion of the two workmen. Plaintiff was not warned that the alterations were being made, but was within five feet of where the work was being done and must have known it.   *Held,* that the injury resulted from the negligence of the fellow servants to which plaintiff contributed.   *pp. 338-342.*

SAME.—*Contributory Negligence.—Co-Employes' Liability Act.*—The co-employes' liability act (section 7083 *et seq.,* Burns' R. S. 1894), does not give an injured employe any right of action, where he was not in the exercise of due care and diligence when injured.   *p. 343.*

From the Marion Superior Court.   *Affirmed.*

*George W. Galvin,* for appellant.

*W. H. H. Miller* and *J. B. Elam,* for appellee.

ROBINSON, J.—Appellant sued appellee for damages for personal injuries.   Upon a special verdict returned by the jury the trial court rendered judgment in appellee's favor.   This action of the court presents the only question under the errors assigned.

The special verdict as to the manner in which the accident occurred shows:   That on the 10th day of April, 1896, appellee, a corporation, was erecting a new building. That W. H. Miller was in charge of the erection of the building as foreman.   That on that date, appellant, while in the employ of appellee as a carpenter engaged in putting on ceiling, was injured by the fall of a scaffold upon which he was at work. The scaffold was inside the building about ten feet from the ground, and had been erected about two days before by the direction of said Miller.   Appellant assisted in the erection of the scaffold, which

was properly constructed, and was safe for the use for which it was intended. On the morning the scaffold' fell, one Whitman and Sleuter, who were experienced carpenters, and who were engaged in ceiling the room where the accident occurred, removed a portion of the supports of the scaffold, with the intention of using them in the prosecution of their work. The supports were two by four inches in size. As they removed the supports they substituted other sufficient supports except the last taken. They had removed three or four, and substituted others before the accident. They removed a support standing within a few feet of where appellant was at work on said scaffold immediately before it fell, and the removal of such support was the cause of the scaffold falling. Whitman and Sleuter had another support at the place ready to substitute for the one removed at the time it fell. Whitman was on the scaffold for the purpose of knocking the support loose, and fell with it. They could have placed the support they intended to substitute in place and secured it so that it would have held the scaffold before knocking out the one they intended to take away. If they had done so, the scaffold would not have fallen. They relied upon the scaffold bearing such weight as was upon it without the support they took from it for the time required to put a substitute in its place. The piece of timber from which the support was taken and upon which the scaffold rested was a piece "two by six," placed on edge, and about twenty feet long. Whitman was about the middle of said piece of timber. Appellant and another man were standing on two planks about sixteen feet long, one end of which rested upon the timber that broke near the place where Whitman was; appellant being nearest Whitman, and about five feet from him, the other man being about four feet

from appellant. The planks were supported at the end furthest from Whitman upon a timber similar to the one that broke. The timber that broke was supported at both ends. When it broke there was no weight on it except part of the weight of the three men and the ends of the scaffolding boards. Whitman and Sleuter removed said supports and substituted others in such manner as they thought best, and the manner in which it was done was wholly within their discretion. They could have placed the substituted supports under the scaffold in such manner as to have prevented the fall of the scaffold, if, in their judgment, it had been necessary to have the substitute support in place before the other was removed. They had been engaged, before the accident, with appellant and others, in ceiling the room, and had worked upon the scaffold that fell. Neither Whitman nor Sleuter warned appellant that they were about to remove a support from the scaffold near where appellant was when it fell. Appellant came upon the planks that fell about the time Whitman and Sleuter removed the support. They could have avoided the accident by warning appellant to remain off the planks. At the time the scaffold fell, appellant was engaged in the work he was employed to do. Miller, the foreman, was in charge of the erection of the building and of the men at work thereon. The supports were removed at his direction, no work was done in or about such scaffolding except such as was pointed out by Miller. There was no other lumber about the building that could have been used for the purpose to which it was intended to place the supports when removed.

From the special verdict we can but conclude that the accident resulted from the negligence of co-employes, and also that appellant himself was not free

from fault which proximately contributed to his injury. While a foreman may have directed the supports to be removed, yet it is evident that the fellow workmen of appellant acted upon their own judgment as to the manner in which the supports should be removed. The rule is well settled that the master must provide a safe place for his employe to work. But where the employe is a carpenter, and himself provides the working place by erecting a scaffold out of timbers, he certainly has a better opportunity than any one else of knowing whether the place is a safe one or not. It is true, the scaffold was safe when erected, but afterwards became unsafe; not, however, from any act or order from the master, or any one representing him, but by the acts of fellow workmen, who had up to that moment been standing upon the scaffold working at the same work, and along with appellant. Thus in *Robertson* v. *Chicago, etc., R. Co.*, 146 Ind. 486, it is said: "The rule in this State, now firmly settled, is that a difference in rank or the power to control and direct or to discharge from service is not the test as to whether one is a fellow servant or a vice principal. The controlling inquiry must be as to whether the act or omission resulting in injury involved a duty owing by the master to the injured servant." And in the case of *Pierce* v. *Oliver*, 18 Ind. App. 87, this court said: "It is now well settled that the decisive test whether in any given case an employe is to be regarded as a vice principal or a fellow servant, is not his title or rank or power to employ or discharge, but the nature of the services which he performs." See *New Pittsburgh, etc., Co.* v. *Peterson*, 136 Ind. 398; *Justice* v. *Pennsylvania Co.*, 130 Ind. 321; *Salem, etc., Co.* v. *Chastain*, 9 Ind. App. 453; *American, etc., Co.* v. *Bower*, 20 Ind. App. 32.

The doctrine that an employer must respond for failure to provide a safe working place ought to have no application in a case like that at bar. Appellant is a carpenter, and is presumed to be skilful in his calling. He was employed because of his particular skill. Had the master been present, his knowledge of the safety of the scaffold could not have been superior to that of appellant. It is true, the jury find that the two workmen who were removing the supports did not warn appellant that they were about to remove a support from the scaffold near where appellant was. But it is not found that appellant did not know they were removing the support. He was within five feet of the workman while he was knocking this support loose. It is not shown that he did not see and hear what was going on, nor that anything prevented his seeing or hearing, nor that his senses of sight and hearing were not good. We cannot presume that appellant did not know that the supports were being removed. Three or four supports had already been removed before the removal of the one which caused the scaffold to fall. If he knew this was going on and continued his work, he assumed any risk caused by such removal. Taking all the facts and circumstances existing at the time as shown by the verdict, it is difficult to escape the conclusion that appellant knew these supports were being removed, and took no steps to protect himself; or, at any rate, the facts and circumstances are such that he should have shown by the verdict that he did not have such knowledge.

No question is made, nor could it be made under the facts, that the scaffold was not safe when first erected, because appellant assisted in its construction and, if it was unsafe, he knew it. It became unsafe through the acts of two of appellant's fellow work-

men. They chose their own method and used their own judgment in changing the supports. Not only was the unsafe condition of the scaffold caused by the acts of co-employes, but the burden was upon the appellant to show such facts as would establish his own freedom from contributory fault, and this he has failed to do.

It is briefly argued by appellant's counsel that the special verdict entitles appellant to judgment under the co-employes' liability act. Section 7083, *et seq.*, Burns' R. S. 1894. But under that act the employe so injured must have been in the exercise of due care and diligence. As we have concluded that the verdict fails to show the exercise of such care, there could be no recovery under that act, even if the case at bar is of the class that would fall within the provisions of that act, which question we need not and do not decide. Judgment affirmed.