## BALTIMORE AND OHIO SOUTHWESTERN RAILROAD COMPANY *v.* HENDERSON.

[No. 4,456.    Filed October 13, 1903.]

MASTER AND SERVANT.—*Section Hands.*—*Fellow Servants.*—Gangs of section hands employed during the day by the same railroad company, and who were proceeding homeward on two hand-cars after the close of the day's work, were fellow servants. *p. 445.*

SAME.—*Defective Brakes on Hand-Car.*—*Proximate Cause.*—Plaintiff averred in his complaint that he was one of a number of section hands on defendant's railroad; that at the close of the day's work he and five of his co-employes boarded a hand-car and started to a city six miles distant; that other co-employes to the number of from eight to twelve boarded a second hand-car, larger and swifter than the first, and followed in close proximity to the first; that by reason of defective brakes the second car became unmanageable, and ran into and derailed the first, causing plaintiff's injuries. On the trial the evidence as to whether the brakes were defective was conflicting, but there was no evidence whatever showing an attempt on the part of those in charge of the car to use the brakes. *Held,* that the defective brakes were not the proximate cause of the injury as alleged in the complaint, and that there could be no recovery. *pp. 442-446.*

From Jackson Circuit Court; *T. B. Buskirk,* Judge.

Action by James F. Henderson against the Baltimore & Ohio Southwestern Railroad Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*O. H. Montgomery, Edward Bratton, H. D. McMullen, C. W. McMullen,* and *H. R. McMullen,* for appellant.

*B. H. Burrell, H. H. Prince* and *S. A. Barnes,* for appellee.

ROBY, J.—This action was brought to recover damages on account of personal injuries. There was a verdict for $2,000, with answers to interrogatories. Judgment on the verdict.

The appellee was, as shown by the evidence, on April—, 19—, in the employment of appellant, working along its right of way, and at about 8:20 p. m. of said day started from a point six miles east of Seymour to go to said town. He and five others similarly engaged put a hand-car on the track, and propelled it west toward their destination, the day's work having been prolonged beyond the usual hours. A second hand-car was placed upon the track behind, and in a short time followed the first one. The second car was larger and faster than the first one. Its crew consisted of from eight to twelve men. The second car caught up with the first one a little while after they started. It made one stop before the accident; the first car made none. The evidence as to the rate of speed at which the cars were running at that time varies greatly. Witnesses testifying for appellee placed the rate of speed as low as five miles an hour. One witness testified that the cars were "running as fast as they could." The appellee testified in substance as follows: "When we started out we were not more than a rail's length apart. We had gone about half a mile or a quarter, I expect, when they caught up and bumped into us. We didn't stop when they bumped into us; just kept going on. We ran about the length of a T rail with the two cars against each other. Then they slacked up when they struck that car. Then we went on about a quarter before they struck us the next time. They kept running in and bumping onto us after we got across

Mutton creek for about a mile.  They had bumped into us before we got to Mutton creek three different times, and after we got about a mile.  They bumped into us about half a dozen times before we got to Mutton creek, and going the next mile they bumped into us.  The next time when they bumped into us the two cars left the track. Both cars went off the track together when they bumped into us.  They bumped into us while my car was going, and we were going pretty fast.  We were going about fifteen miles an hour—fifteen or twenty miles an hour.  I couldn't tell exactly, but near fifteen or twenty miles an hour; that is my best judgment.  The car following us caused our car to be derailed, and both came off together. Just as they struck our car we both went off together.  I suppose the other car knocked us off the track.  They had bumped into us, and about the twelfth time they bumped into us they knocked us off the track.  When they knocked us off I was helping to propel the car, working the lever, and was facing the west.  The first I knew that they were coming, my back was toward them, and I heard them holler, 'Get out of the way.'  The first I knew of their coming was when the car struck ours, except that I heard them say, 'Get out of the way.'  The two cars locked together and raised the front end of our car, I think, over the rails. The two cars have handholds on each end, and they came together with such force they stuck these together.  The handholds are near the center.  They are fastened underneath, fastened on the arm of the car.  They are of wood, and stick out about eight or ten inches.  There are two on each end of the car.  They are probably two inches through, and about a foot from the side of the car.  I couldn't say whether Teepe's car run on the top or at the side of our car, but his car bore down on the rear end of ours and raised the front end up.  The front wheels of the car went off first, and left the hind wheels of my car between the

rails; two of the wheels of my car were outside the rails, one front wheel and one hind wheel. I was thrown in front of the car."

The evidence further shows that those operating the second car knew the condition of the brake thereon; that they stopped the car by reversing the handles. No attempt was made to use the brake in order to avoid the collision. The foreman in charge of the second car, testifying for appellant, said that the brake was in fair condition, and that he could have stopped the car, at the rate it was running, within ten feet. Other evidence tends to show that the brake was not in good repair, and that the car could not be stopped by its use.

The paragraphs of complaint upon which the cause was tried contained two specific charges of negligence: (1) "And that the appellant had carelessly and negligently failed to equip said hand-car so following the one upon which the appellee was riding with proper and sufficient brakes to regulate and control its speed, and had permitted the brake on said car which was following the one on which the appellee was riding to become worn and out of repair, so that it would and could not regulate the movement of the car. And that at a certain place on the road where the descent was steep, that the car following the one on which the appellee was riding became unmanageable and uncontrollable, on account of the unsafe, insufficient, worn-out, and defective brake, and that it ran against the one on which appellee was riding with such force that the car was derailed, and thus he received his injuries." (2) That appellee's hand-car was defective by reason of a bent axle. The jury in answer to interrogatories found the non-existence of the last alleged defect. The finding is in accord with the evidence, and this specification of negligence does not, in view thereof, require further consideration. The effect of the general verdict is to find that the defective brake was the proximate cause of the injury

complained of as alleged. The interrogatories are answered to that effect.

Before taking up the merits of the respective contentions, appellee's point that the evidence is not in the record is entitled to consideration. The bill containing the evidence was signed, as appears upon its face, on April 28, 1902. It was filed, as is shown by an order-book entry, on the following day—April 29. It does, therefore, sufficiently appear that the bill was filed after being signed by the trial judge. *Oster* v. *Broe,* 161 Ind. ——.

The "gangs" of men upon the two hand-cars were in the employment of the same master, in the same work. The day's labor was ended, and they, with the section foreman, were going home. They were, within all the authorities, fellow servants. *Capper* v. *Louisville, etc., R. Co.,* 103 Ind. 305; *Peirce* v. *Oliver,* 18 Ind. App. 87; *Hodges* v. *Standard Wheel Co.,* 152 Ind. 680; *Justice* v. *Pennsylvania Co.,* 130 Ind. 321. In order to fix liability upon appellant, it devolved upon appellee to establish the truth of that averment contained in his complaint to the effect that its negligence, as specified, caused the injury complained of; in other words, that the defective brake was its proximate cause. This was a question of fact. *Chicago, etc., R. Co.* v. *Martin, ante,* 308.

There is no room for other inference than that those operating the second car caused the collision, and the resulting injury to plaintiff, by the reckless manner in which the same was run. They knew the condition of the brake. In the absence of the testimony to the effect that it was said, when the stop before referred to was made, that the brake was not good, it is apparent that those using a hand-car not only can see and know the condition of its brakes, but would find it difficult to avoid knowing it. Taking the car as it was, it became their duty so to manage it as not to inflict injury upon others. Their recklessness in running at the rate of speed and in such proximity to

the first car as they did is wholly inexcusable. The rear car "bumped" the forward one repeatedly. It does not appear that any effort was made to avoid so doing. It did not, probably, occur to them that running against the more slowly moving car would derail it. That it did do so is an essential element to appellee's recovery. It appears that there was neither inclination nor attempt to use the brake before the collision. The appellant's total failure to equip its car with a brake would not, therefore, seem to be even a remote cause of the collision. It might, with more plausibility, be argued that appellant should respond in damages for having furnished its reckless employes with a hand-car geared to a speed faster than the one ahead of them, thereby making it possible for them to overtake the first car, than that it be held liable for furnishing a defective brake which they did not try to use. There is no evidence in the case tending to show that the alleged defect of the brake was the proximate cause of the injury. *Clarke* v. *Pennsylvania Co.,* 132 Ind. 199; *Neutz* v. *Jackson, etc., Coke Co.,* 139 Ind. 411.

This conclusion requires a reversal of the judgment, and renders the decision of other questions unnecessary.

Judgment reversed. Cause remanded, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent herewith.